[No. G045896. Fourth Dist., Div. Three. May 15, 2012.]

In re A.S. et al., Persons Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
B.B., Defendant and Appellant.

[No. G045901. Fourth Dist., Div. Three. May 15, 2012.]

In re AD. S., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
B.B., Defendant and Appellant.

## Counsel

Lisa A. Raneri, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

## Opinion

**FYBEL, J.—**

### Introduction

A.S. and her brother, Ad.S., now 10 and seven years old, respectively, have been dependents of the juvenile court system for more than four years. Long-term foster care was chosen as their permanent plan. Primarily because of their behavioral problems, no foster care placement has been successful, and the children have been living at an emergency shelter group home for over one year. The Orange County Social Services Agency (SSA), as well as

other professionals charged with A.'s and Ad.'s well-being, ultimately determined that they each stood a better chance of a long-term foster care placement if they were placed separately. After a hearing, the juvenile court rescinded its earlier order requiring that A. and Ad. be placed together. Their mother, B.B. (mother), appeals from the order permitting A. and Ad. to be placed separately. The juvenile court did not err, and we therefore affirm.

Mother also appeals from an order approving an application to administer psychotropic medication to Ad. Mother argues she was denied due process because of the short timeframe contained in California Rules of Court, rule 5.640(c)(8), for filing an opposition to the application. We disagree, and affirm the juvenile court's order. We publish this opinion especially to call the Judicial Council's attention to the need to amend this rule of court to change the filing date for an opposition to or a request for hearing on an application to administer psychotropic medication.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

A. and Ad., then six and three years old, respectively, were detained in December 2007. The juvenile court sustained a dependency petition under Welfare and Institutions Code section 300, subdivisions (b) and (c). (All further statutory references are to the Welfare and Institutions Code.) A. and Ad. were removed from their parents' custody, and family reunification services were ordered. Following a section 366.26 hearing, the juvenile court ordered a permanent plan of long-term foster care for A. and Ad., finding they were not adoptable and no one was willing to accept legal guardianship of them.

A. and Ad. were placed at the New Alternatives Sibling Assessment Facility (SAF) because there were no foster homes available to accommodate both of them. Some placements had been ended by the foster parents because of A.'s and Ad.'s behavioral issues. Before the section 366.26 hearing, the juvenile court had approved the administration of psychotropic medication to A. to deal with her physical and verbal aggression, severe tantrums, and head banging. A.'s behavior gradually improved, and, by May 2011, she displayed few or no major behavioral issues.

Ad., however, continued having severe tantrums. During his tantrums, he would hit, kick, bang his head, and make statements such as, "[y]ou just want me to die." Ad. was periodically placed on " 'observe' status" at SAF, and twice attempted to assault SAF staff members. When mother failed to visit A. and Ad. between May 19 and June 8, 2011, A.'s negative acting out behaviors increased, and Ad. became aggressive, assaultive, and self-harming. Ad.'s

therapist recommended that the SAF staff remain with him all day, and Ad. was assigned a therapeutic behavior specialist due to his aggressive and defiant behavior.

After A. and Ad. had been housed at SAF for more than seven months, the SAF staff and A. and Ad.'s social worker, among others, agreed SSA should attempt to secure separate foster homes for the children. Preplacement visits occurred between A. and a potential foster mother. A. and Ad.'s appointed attorney objected to their potential separation, and mother requested a contested hearing be held before a decision was made on whether to place them separately.

In a postpermanent plan review report filed in August 2011, pursuant to section 366.3, SSA reported that A. and Ad. remained placed at SAF. A. and Ad. wanted to have their parents visit, and wanted to move into a foster home, but did not want to be adopted. Ad.'s behavior was impeding an alternative placement option. Although mother wanted to reunify with A. and Ad., she failed to visit consistently. The aggressive and disruptive behavior displayed by both A. and Ad. was connected to mother's inconsistent visits. Their therapist reported both A. and Ad. experienced tantrums, aggression, noncompliant behavior, and negative attention-seeking behavior, all of which impaired their daily living activities and ability to learn and socially thrive. Ad. also suffered from anxiety, and A. experienced symptoms of anxiety, fear, sadness, and sleep disturbances related to placement changes.

Ad.'s court-appointed special advocate (CASA) reported he was currently the "most depressed and emotionally unstable" that she had ever seen him during the year and a half she had known him. The CASA stated that Ad. "is a great kid who feels like no one wants him and is just looking for someone to spoil him with attention and love." The CASA also reported that A. and Ad. "feed off each other" by antagonizing each other, although A. would help Ad. and talk to him when he became angry.

In review reports, SSA reported that mother cancelled 13 visits and failed to appear for another 13 visits with A. and Ad. during the period from March 20 through September 2, 2011. SSA also reported that A.'s preplacement visits with a foster family had gone well, and she was ready to be placed with the family, but no foster homes were available for Ad., who continued to have significant behavioral issues.

A.'s CASA reported that A. and Ad. had a good relationship, they played well together, and enjoyed each other's company. A. was preoccupied with the uncertainty of her situation and her relationships with others. SSA reported that A. wanted to move to a foster home, and said she was "ok" with moving away from Ad.

At the review hearing, mother's attorney objected to separating A. and Ad., on the ground separation would be detrimental to both of them. However, A. and Ad.'s counsel advised the court and the parties that Ad.'s therapist had stated that while Ad. originally opposed being separated from A., Ad. now agreed and understood that it might be appropriate for A. to have a different placement. During informal discussions, the substance of which was later agreed to on the record by the court and all counsel, the children's counsel advised the court that A.'s therapist had also indicated it would be appropriate for her to have a separate placement.

The juvenile court found A.'s and Ad.'s permanent plan of long-term foster care remained appropriate, but rescinded an earlier order preventing their separation. The court also authorized monitored weekly sibling visits.

In a later review report, SSA reported that A. and Ad. were still living at SAF. A.'s potential foster parents had declined to accept her placement with them, because the order for sibling visits was too onerous for them.

On September 19, 2011, Ad. was given a dose of a psychotropic medication, Risperdal, on an emergency basis due to his increasingly dangerous and self-destructive behavior. Ad.'s behavioral difficulties had increased dramatically, and he was having major issues on a daily basis. Ad. suffered tantrums that lasted three to five hours, displayed self-harming and assaultive behaviors, and had difficulty regulating his mood. On September 26, SSA filed an application seeking approval of the earlier administration of Risperdal, and authorization to continue to administer it, to Ad. to help control his behavior. The juvenile court granted the application, but requested that the doctor seek an alternative medication. (Neither party disputes that Risperdal is a psychotropic drug, the administration of which is governed by § 369.5, and Cal. Rules of Court, rule 5.640.)

On September 27, 2011, SSA filed a report stating that the severity and frequency of Ad.'s acting out behaviors had decreased since he began taking Risperdal, although he had still engaged in several incidents of unsafe and assaultive behavior.

On October 4, 2011, mother filed an opposition to the application for administering psychotropic medication, arguing that Ad.'s behavior had worsened because of the plan to separate him from A. Mother felt the use of psychotropic medication was a drastic and potentially harmful measure. She specifically objected to the use of Risperdal, due to the lack of studies regarding its use in children, and the potential of harm from the drug, due to her family's history of diabetes, heart disease, high blood pressure, and stroke. Mother requested that SSA pursue an alternative treatment method.

SSA filed another report before an October 11, 2011, review hearing. SSA stated that Ad.'s psychologist opined the Risperdal had subdued and mellowed Ad., and had given him more moments of not being aggressive. The psychologist believed Ad. showed progress because he was more needy, vulnerable, and emotional, rather than controlling and angry. SAF reported "a significant decrease in Ad[.]'s aggression."

At the review hearing, mother's counsel requested a hearing on mother's opposition to Ad.'s psychotropic medication regimen. Mother claimed she did not receive notice of the application until September 29, making her opposition one day late. Mother's counsel also argued the two-day requirement to file an opposition was unconstitutional. Counsel stated: "The Legislature has made it unreasonable for [mother] to make her concerns known to the court for having a hearing with the psychiatrist. So, we're asking that the court waive the defect in the filing time and ask to set a hearing."

The juvenile court found mother's opposition untimely, and also found the opposition failed to show any harm to Ad. by the administration of Risperdal. Therefore, the court denied mother's request without prejudice, "subject to any concerns." The court ordered that a copy of mother's opposition be submitted to Ad.'s psychiatrist to ensure he was aware of the family's medical history.

Mother filed separate notices of appeal from the order permitting separate placements for A. and Ad., and the order authorizing the administration of psychotropic medication to Ad.

DISCUSSION

I.

ORDER PERMITTING SEPARATE FOSTER CARE PLACEMENTS

Mother challenges the juvenile court's order permitting A. and Ad. to be separated for purposes of foster care placements.

A.

*Mootness*

SSA argues mother's appeal of this order is moot, because after entry of the order, mother stipulated that the separate placements of A. and Ad. were

necessary and appropriate. In support of this argument, SSA filed (1) a request for judicial notice of a periodic review report signed by mother's counsel, and the minute order from the periodic review hearing on February 10, 2012; and (2) motions to augment the record on appeal and to take additional evidence of SSA's addendum report for that periodic review hearing.

While postjudgment evidence is generally not admissible on appeal (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541]), it may be considered to determine whether it renders an issue moot on appeal (*In re Josiah Z.* (2005) 36 Cal.4th 664, 676 [31 Cal.Rptr.3d 472, 115 P.3d 1133]). The evidence offered by SSA in support of its mootness argument is not the type of "unambiguous stipulation" that this court has previously found sufficient to dismiss an appeal as moot. (*In re Dani R.* (2001) 89 Cal.App.4th 402, 405 [106 Cal.Rptr.2d 926].) Mother did not sign the document SSA refers to as a "stipulation," and has submitted a declaration stating she would never have stipulated that A. and Ad. should be placed separately. Under these circumstances, the purported stipulation does not unambiguously render the appeal of the separate placements order moot. We therefore deny the request for judicial notice, the motion to augment, and the motion to take additional evidence.

### B.

### *Standing*

SSA also argues mother lacks standing to raise this argument on appeal because the juvenile court's order affects A.'s and Ad.'s rights, not mother's. The cases SSA cites for the proposition that a parent lacks standing to challenge such placement decisions all predate the creation of the sibling bond exception to termination of parental rights—an exception that a parent unquestionably has standing to argue. (§ 366.26, subd. (c)(1)(B)(v); *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 948–951 [124 Cal.Rptr.2d 688].)

Contrary to SSA's argument is a host of recent cases finding parents have standing in dependency cases to raise issues regarding placement and visitation. (See *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1053–1054 [81 Cal.Rptr.3d 556] [before parental rights terminated, parent has standing to challenge juvenile court's order regarding placement decisions]; *In re Valerie A.* (2007) 152 Cal.App.4th 987, 999–1000 [61 Cal.Rptr.3d 403]

[parent has standing to raise issues of sibling visitation that affect the applicability of the sibling bond exception to termination of parental rights]; *In re H.G.* (2006) 146 Cal.App.4th 1, 10 [52 Cal.Rptr.3d 364] [after reunification services terminated, parent still has standing to challenge order removing child from relative placement].) We conclude mother has standing to challenge the juvenile court's order permitting A. and Ad. to be placed in separate foster homes.

C.

*Merits*

Placement decisions in dependency proceedings are "committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established. [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

Mother points out that, at the September 27, 2011 hearing at which the order was entered, the juvenile court did not admit into evidence any SSA report or CASA report that stated separate foster home placements would be in A.'s and Ad.'s best interests. The juvenile court, however, could consider A.'s and Ad.'s lengthy history in the juvenile court system; they were removed from mother's custody more than three years earlier. The court was well aware of the many unsuccessful efforts to place A. and Ad. in a foster home together and of the negative effect on them of their lengthy stay in SAF, which is designed as an emergency shelter home, not a long-term foster placement. (See generally *In re Mickel O.* (2011) 197 Cal.App.4th 586, 616 [130 Cal.Rptr.3d 46] [juvenile court considers "entire factual and procedural history of the case" when considering § 388 petition].)

■ The juvenile court did not abuse its discretion in rescinding its earlier order that A. and Ad. not be placed in separate foster homes. A. and Ad. had been at the emergency SAF placement for more than eight months, and SSA had been unable to find any foster placement willing to accept them as a sibling set. Following a meeting between SSA social workers, SSA supervisors, SAF supervisors, a CASA supervisor, a court psychologist, and Ad.'s therapeutic behavior specialist, it was decided by that group the best plan for A. and Ad. would be to try to secure separate foster placements for them. Within a day, a potential foster placement for A. had been identified.

The juvenile court refused to consider the request to change the placement order immediately, and instead opted to review the reports carefully and decide the issue at a later scheduled periodic review hearing. Ultimately, after further reports were filed and the parties were able to argue the issue at the periodic review hearing, the juvenile court rescinded its order prohibiting A.'s and Ad.'s separate placements. At that hearing, A. and Ad.'s appointed counsel advised the court and the parties that Ad. had told his therapist it "might be appropriate for A[.] to have a different placement." This statement involves multiple layers of hearsay and would normally be inadmissible. But we cannot ignore counsel's role as A. and Ad.'s guardian ad litem, charged not only with advocating for them but also with presenting their wishes to the court. (§ 317, subds. (c), (e).) Mother did not object to the court's consideration of counsel's unsworn statement on the ground of hearsay, and her counsel expressly acknowledged at the hearing that "the therapist doesn't believe it would be detrimental" to place A. and Ad. in separate placements. (See *In re Heather H.* (1988) 200 Cal.App.3d 91, 95 [246 Cal.Rptr. 38] [unsworn testimony at juvenile court hearing may be evidence if the other side does not object].)

■ Mother is correct that section 16002 requires that siblings removed from their home and placed in foster care be placed together "unless it has been determined that placement together is contrary to the safety or well-being of any sibling." (§ 16002, subd. (a).) That same statute requires the responsible agency to "make a diligent effort" to place siblings in the same foster care placement, but also requires that when this is not possible, "ongoing and frequent interaction among siblings" must be facilitated. (§ 16002, subd. (b).) The record in this case shows that SSA made a diligent effort to place A. and Ad. in the same foster home. When it was determined that requiring they be placed together was negatively affecting their placement options, the order allowing separate placements required weekly visitation between them. The juvenile court's order did not violate the mandate of section 16002.

The need to protect the sibling bond between A. and Ad. by keeping them placed together directly conflicts with the need to find permanent homes for them. This conflict distinguishes this case from so many others that we review. We do not intend to minimize the potential negative effects of their separation. There is no perfect solution here. This case, therefore, is an excellent example of the abuse of discretion standard of review in operation. Here, the juvenile court carefully explained its exercise of discretion in determining that permitting SSA to pursue separate foster placements would maximize the chances for A. and Ad. to obtain stable, appropriate homes. We find no abuse of that discretion.

Even if mother were correct that we should review the case to determine whether the record contains substantial evidence that separating A. and Ad. would not be detrimental to them (and not use an abuse of discretion standard), we would still affirm the juvenile court's order. The professionals who were aware of A. and Ad.'s situation and were charged with protecting them and promoting their best interests reached a collective decision that allowing them to be placed separately would increase the chances of finding a permanent home for each; this collective, considered decision constitutes substantial evidence supporting the court's findings. A. and Ad.'s counsel's statements, A.'s expressed desires, and the relatively quick identification of a foster home for A. are further support for the court's findings.[1]

II.

### DID CALIFORNIA RULES OF COURT, RULE 5.640(C)(8) DENY MOTHER DUE PROCESS?

■ Mother argues California Rules of Court, rule 5.640(c)(8) denied her due process, because it only permits a parent two court days to file an opposition to an application seeking authorization to administer psychotropic medication to a dependent child.[2] Rules of court must be construed, "if possible, to avoid . . . doubt as to [their] constitutionality. [Citation.]" (*McGown v. Superior Court* (1977) 75 Cal.App.3d 648, 652 [142 Cal.Rptr. 262].)

■ "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 70 S.Ct. 652].) A parent has a right to due process in a juvenile dependency proceeding. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 222–223 [33 Cal.Rptr.3d 337].)

---

[1] Mother frames the issue as whether there was substantial evidence that separation was in Ad.'s best interests. Mother does not cite any authority for considering each child's interests differently, especially if they are facially in conflict. However, SSA's reports note both A.'s and Ad.'s options for permanent placement were better if they could be placed separately.

[2] California Rules of Court, rule 5.640(c)(8) provides: "A parent or guardian, his or her attorney of record, a child's attorney of record, or a child's Child Abuse Prevention and Treatment Act guardian ad litem appointed under rule 5.662 of the California Rules of Court who is opposed to the administration of the proposed psychotropic medication must file a completed *Opposition to Application Regarding Psychotropic Medication* (form JV-222) *within two court days of receiving notice* of the pending application for psychotropic medication." (Second italics added.)

The administration of psychotropic medication to a child in the juvenile dependency system is addressed in section 369.5: "(a) If a child is adjudged a dependent child of the court under Section 300 and the child has been removed from the physical custody of the parent under Section 361, only a juvenile court judicial officer shall have authority to make orders regarding the administration of psychotropic medications for that child. . . . Court authorization for the administration of psychotropic medication shall be based on a request from a physician, indicating the reasons for the request, a description of the child's diagnosis and behavior, the expected results of the medication, and a description of any side effects of the medication. . . . [¶] . . . [¶] (c) Within seven court days from receipt by the court of a completed request, the juvenile court judicial officer shall either approve or deny in writing a request for authorization for the administration of psychotropic medication to the child, or shall, upon a request by the parent, the legal guardian, or the child's attorney, or upon its own motion, set the matter for hearing." (§ 369.5, subds. (a), (c).) California Rules of Court, rule 5.640 implements the mandate of section 369.5.

In 2004, section 369.5 was amended, as set forth above, to add the requirement that the application be approved or denied, or a hearing on the application be set, no later than seven days after the application is filed. (Stats. 2004, ch. 329, § 1, p. 3301.) At the time, the legislative purpose of the amendment was set forth as follows: "This bill, sponsored by the California Alliance of Child and Family Services, revises existing law regarding court orders for the administration of psychotropic drugs to children in the dependency system. As amended, the bill sets forth a clear and appropriately speedy time line (seven business days) for juvenile courts to either decide these important medication issues in writing or to set a hearing on the matter. No such time line exists under current law, and the author notes in support of the bill that it is critically important to the lives of many children in the dependency system that medication decisions be made as quickly as possible. The author sees the bill as a way to provide for timely disposition of psychotropic drugs to children in foster care." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2502 (2003–2004 Reg. Sess.) as amended Feb. 19, 2004, p. 2.) The legislative history underlying this statute makes clear the Legislature intended that the timeframe for making a decision on the administration of psychotropic medication to a dependent child must be short. The rules of court which implement that statute must also comport with that legislative intent.[3]

Under all the circumstances, California Rules of Court, rule 5.640(c)(8) provides interested parties with notice and an opportunity to be

---

[3] California Rules of Court, rule 5.640(c)(8) was added effective January 1, 2008, presumably to address the 2004 amendment to section 369.5.

heard on an application for administration of psychotropic medication, and therefore comports with due process. The two-court-day requirement for filing an opposition must be considered in relation to the seven-court-day timeframe for making a decision on the application or scheduling a hearing. In this context, the two-court-day requirement for filing an opposition is reasonable.

In this case, mother was not denied an opportunity to oppose the application for administration of psychotropic medication to Ad. The court ordered her opposition to be filed, despite its late presentation, and ordered the opposition be transmitted to the prescribing doctor to apprise him of mother's concerns regarding Ad.'s medication and treatment. Before mother's opposition was even filed, the court's order authorizing the administration of psychotropic medication to Ad. required that the prescribing doctor consider an alternative medication to Risperdal.

Despite mother's argument to the contrary, she was not guaranteed a right to a hearing on SSA's application. Section 369.5, subdivision (c) provides that "[w]ithin seven court days . . . , the juvenile court . . . shall either approve or deny in writing a request for authorization for the administration of psychotropic medication to the child, or shall, upon a request by the parent, the legal guardian, or the child's attorney, or upon its own motion, set the matter for hearing." The juvenile court in this case complied with section 369.5 by approving the request within seven court days. The alternative procedure of setting the matter for hearing did not come into play.

In our view, California Rules of Court, rule 5.640(c)(8) needs to be amended. The rule requires the interested party to file opposition to the application "within two court days of receiving notice." How does one determine when notice is received? Tying the opposition due date to receipt of notice could result in oppositions that are timely but filed after the juvenile court has made its decision. Although that is not a problem presented by the facts of this case, we would call on the Judicial Council to consider an amendment to this rule of court that will support the purposes of facilitating (1) prompt action on applications for psychotropic medication and (2) timely input from all interested parties. Such an amended rule of court would tie the opposition due date to the date of service of the application, not to receipt of the application.

DISPOSITION

The orders are affirmed.

Rylaarsdam, Acting P. J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 22, 2012, S203546.