Filed 8/7/13  M.C. v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| M.C., | |
| Petitioner, | E058815 |
| v. | (Super.Ct.No. SWJ010085) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  John M. Monterosso, Judge.  Petition is denied.

David A. Goldstein for Petitioner.

No appearance for Respondent.

1

Pamela J. Walls, County Counsel, and Anna M. Deckert, Deputy County Counsel, for Real Party in Interest.

Petitioner, the prospective adoptive mother of minor Ai.M., challenges the trial court's decision to uphold the decision of real party Riverside County Department of Public Social Services (Department) to remove Ai.M. from her care and seek an alternative permanent home, which would also accommodate Ai.M.'s older sister, Al.M. Although this is an unfortunate case, we find no abuse of discretion and deny the petition.

## STATEMENT OF FACTS

No detailed history of the dependency proceedings is necessary.[1]

Both children were found to be dependent children of the court on July 27, 2010, on grounds of physical and sexual abuse, specifically to Al.M., who had been repeatedly sodomized by an uncle before the age of five. (Welf. & Inst. Code, § 300, subd. (b)(d)(g)(j).)[2] At the time, Al.M. was almost six, and Ai.M. was just over a year old.

Eventually reunification failed, and the parents'[3] parental rights were terminated in January 2013. By this time—in fact as of June 2012—both girls had been placed with petitioner as a foster/prospective adoptive home, and things went well enough that

---

[1] Due to the nature of the issue before us, only a brief synopsis of the history of the case is necessary.

[2] All subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] Ai.M. and Al.M. have the same mother, but different fathers.

2

by November of that year the social worker was recommending that petitioner be given preference in adoption of the children. However, Al.M. had been diagnosed with posttraumatic stress disorder arising from her molestation. Problems were escalating.

In April 2013, petitioner asked the Department to remove Al.M. The Department responded by filing a "Notice of Intent to Remove Child" (Judicial Council Forms, form JV-323), indicating that Ai.M. would be removed from petitioner because petitioner wished only to adopt Ai.M. and the siblings had never lived apart. It was asserted that petitioner lacked the skills to parent a "special needs" child like Al.M. Petitioner opposed the removal, stating that Al.M. was physically abusive to Ai.M. and had "night rages." Petitioner suggested that Al.M. might never be able to form attachments, and that it was unfair to Ai.M. to have to "follow her sister from home to home until her sister is stable or worse[.] [H]er sister could go into one of her rages and try to hurt [Ai.M.]." However, petitioner also acknowledged that Ai.M. and Al.M. were "bonded and love each other very much."

The Department then filed an addendum report that essentially abandoned the glowing view of petitioner that had been presented to the court at the time the children were placed with petitioner. In this addendum, the social worker found it "shocking" that there were not photographs of the children in petitioner's residence and reported that petitioner had refused to cooperate with Al.M.'s "in-home" therapist. Petitioner also reportedly accused the Department of having hidden Al.M.'s issues from her. Petitioner

had asked for "respite" care because Al.M. was "out of control" and she herself was "losing it and at her wits' end." After failing to have Al.M. committed under section 5150, petitioner essentially abandoned her back to the Department. The social worker predicted that Ai.M. might also be "strong-willed" and exhibit "behaviors" as a result of being separated from her sister, and would fear abandonment after seeing what happened to Al.M.

There was extensive testimony at the hearings on the issue. In summary, two social workers testified that Ai.M.'s relationship with her sister was her primary attached relationship and that this relationship should be given precedence. There was testimony that Ai.M. had stated that she wanted to be with her sister. One of the social workers also testified as to her observations of the loving relationship between the two, and characterized instances of rivalry, and even physical altercations as normal. The plan was to seek a new adoptive home that was appropriate for both children. Petitioner's sister testified that Ai.M.'s behavior had begun mimicking that of Al.M. (in a bad way) since the latter was removed. Petitioner herself indicated that she would be willing to help preserve the sibling bond and would consider caring for Al.M. in the future.

The trial court found that Ai.M.'s best interest required that she be removed from petitioner so that a joint placement with Al.M. could be pursued. It stressed that it was not finding that petitioner's care of Ai.M. had been in any way lacking, but pointed out

4

that Al.M. had been the one stable factor in Ai.M.'s life after they were removed from their home under what it described as "difficult" circumstances. It acknowledged that Ai.M. was bonded to petitioner, but found that Ai.M. would be better able to recover from any detriment created by the removal than she would the separation from her sister.

## DISCUSSION

The Legislature has repeatedly recognized the importance of the sibling bond. (See, e.g., §§ 362.1, subd. (a)(2), 366.26, subd. (c)(1)(B)(v), & 16002; see also *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1423.) However, it has also been recognized that an adoptive placement should not lightly be disturbed, and when the prospective adoptive parent objects to the removal, section 366.26, subdivision (n)(3), prohibits the court from approving removal unless it affirmatively finds that removal is in the child's best interest. This provision was enacted to ensure prompt review of such removals. (*State Dept. of Social Services v. Superior Court* (2008) 162 Cal.App.4th 273, 284 (*Dept. of Social Services*); see *In re Harry N.* (2001) 93 Cal.App.4th 1378 [where protracted litigation over the issue adversely affected the child's need for stability].)

Placement decisions are generally entrusted to the sound discretion of the trial court. (*State Dept. of Social Services*, *supra*, 162 Cal.App.4th 273, 287; *In re A.S.* (2012) 205 Cal.App.4th 1332, 1340.) However, because section 366.26, subdivision (n)(3), requires a specific finding, the Department also argues that substantial evidence supports

5

the decision. Lack of substantial evidence to support a ruling, of course, reflects an abuse of discretion. (*In re William B.* (2008) 163 Cal.App.4th 1220, 1229.)

As the trial court expressly recognized, there was no "clearcut [*sic*]" answer in this case, and no perfect solution. As noted above, it also found no reason to criticize petitioner's caregiving skills with respect to Ai.M. However, the Department presented substantial evidence that the siblings were closely bonded to one another, and petitioner even agreed that they "love[d] each other very much." Both the legislative view and the evidence supports the conclusion that it was in Ai.M.'s best interest to pursue a joint placement with her older sister.

Petitioner argues that the trial court did not credit her evidence, which suggested that Al.M.'s behaviors of aggression constituted a danger to Ai.M. However, the trial court was not obliged to credit this evidence and could accept the Department's belief that nothing more than normal sibling roughhousing had occurred, perhaps misunderstood or magnified by petitioner. Petitioner also argues that there is no assurance that a joint permanent placement can be found for the minors, given Al.M.'s behavioral issues. However, the Department clearly thinks that such placement can be found and there is no basis in the record to conclude otherwise.

As we noted at the outset, this is an unfortunate case for several reasons. However, there is substantial evidence that Ai.M.'s relationship with her sister is the most important one in her young life; accordingly, the trial court did not abuse its discretion by permitting the Department to make further efforts to protect and preserve that bond.

6

DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>HOLLENHORST</u>

Acting P. J.

We concur:

<u>MCKINSTER</u>

J.

<u>MILLER</u>

J.

7