[No. A122162. First Dist., Div. Four. Mar. 17, 2009.]

In re the Marriage of DAVID M. DELLARIA and ELIZABETH L. BLICKMAN-DELLARIA.
DAVID M. DELLARIA, Appellant, v.
ELIZABETH L. BLICKMAN, Respondent.

## Counsel

Law Offices of Bernard N. Wolf, Bernard N. Wolf; Wagner & Wagner and Ronald A. Wagner for Appellant.

Judith H.B. Cohen and Garrett C. Dailey for Respondent.

## OPINION

### RUVOLO, P. J.—

## I. INTRODUCTION

In this marital dissolution action between David M. Dellaria (David) and Elizabeth L. Blickman-Dellaria (now Elizabeth Blickman) (Elizabeth), David has filed this appeal challenging the trial court's division of the parties' community property.[1] The trial court found that after the parties had separated, they entered into a valid and enforceable oral agreement to divide the major assets in the marital estate. The court then adjudicated their community property rights in accordance with the parties' agreement, even though it resulted in an uneven distribution of property. It is noteworthy that the parties' agreement was never reduced to writing, nor was there an in-court stipulation by the parties to divide their assets in accordance with their oral agreement.

David argues that the trial court erred as a matter of law in making an uneven distribution of the parties' community property in accordance with their oral agreement. He points out that, according to Family Code section 2550, the court was statutorily mandated to order an equal division of community assets, "[e]xcept upon the written agreement of the parties, or on oral stipulation of the parties in open court." We agree with David that Family Code section 2550 renders the parties' postseparation oral agreement void and unenforceable; consequently, we reverse the judgment.

## II. FACTS AND PROCEDURAL HISTORY

The parties were married on August 27, 1989. They have three children. David filed a petition for dissolution of marriage on September 22, 2000. The court found that the parties actually separated on December 31, 2001.

The extensive appellate record before us reflects that there exists a myriad of complex issues arising from the marital relationship, including issues related to child custody, child and spousal support, visitation, and the parties' community property rights. However, this appeal focuses on a single issue, which was the subject of a bifurcated trial. Relevant to this appeal, Elizabeth described the issue before the court as follows: "The bifurcated trial issue addressed herein is whether or not the parties entered into an enforceable oral

---

[1] From this point forward, we follow the convention in family law cases of referring to the parties by their first names, as the parties themselves do in their briefing.

agreement dividing their major community assets. Elizabeth contends that the parties entered into this agreement, fully performed this agreement, and are bound by this agreement."

On November 2, 2007, the trial court began taking evidence on this question. Elizabeth testified that she and David had started discussing the property division in late 2002, and they reached an oral agreement dividing their major community assets in March 2003.[2] She testified about the significant financial effects of the agreement as evidenced by the documentary evidence.

Briefly, the family home in San Rafael, California, which was held by David, was transferred solely to Elizabeth. The real property transferred to Elizabeth was refinanced and $217,562 in cash was given to David. In addition, two Wachovia brokerage accounts that were in David's name alone were transferred to Elizabeth.

A second piece of real property in Novato, California, which was held in both parties' names, was transferred to David. A third piece of real estate in Homewood, California, and Moving Images, Inc., the community business, were already in David's name and were retained by him alone. Elizabeth testified that under the oral agreement, each party was to retain his or her retirement plans. David was to keep two vehicles and she was to keep one.

David denied that he had any discussions with Elizabeth in March 2003 regarding a settlement of their property rights. He attempted to provide a rational explanation, apart from the alleged oral agreement, why he had signed over the family home and the Wachovia accounts to Elizabeth, why he was given $217,562 in refinance money, and why he was given sole ownership to the property in Novato.

During closing argument, Elizabeth's attorney stated that the issues were "whether the parties entered into a fully executed oral agreement dividing their property" and "are the property transfers that occurred between 2003 and 2005 enforceable property transmutations?" The attorney summarized Elizabeth's position "that all property has been divided, that judgment

---

[2] At oral argument, Elizabeth's counsel claimed that when the parties' entered into discussions about dividing their property, Elizabeth was unaware that David had filed a petition for dissolution of their marriage. The record does not bear out this assertion. As already noted, Elizabeth testified that she and David started discussing the property division in late 2002 and that they reached an oral agreement in March 2003. The factual basis for counsel's argument is unclear because the record reflects that on February 6, 2002, Elizabeth was served with a summons notifying her of David's dissolution petition. In light of the record, Elizabeth undoubtedly knew that a marital dissolution proceeding had been initiated at the time she entered into discussions about dividing the marital property.

should be entered on the parties' fully performed agreement dividing their property, and that all property transfers were valid transmutations. . . ."

David's trial counsel questioned whether an oral agreement existed. He said: "There is no executed marital settlement agreement. There is no agreement of any kind executed by the parties that divide[s] the community property or recognize[s] the separate property estates of the respective parties. . . ." David's position, in essence, was that the parties' community property and separate property interests in these assets remained unadjudicated and unresolved.

On December 21, 2007, the trial judge filed a judgment and statement of decision. The following findings are particularly relevant to this appeal: The court found that the parties ". . . fully executed their oral agreement . . . and have disposed of the issues of the valuation and disposition of their real estate, the Wachovia accounts, and [David]'s business by a fully executed oral agreement . . . ."[3] The court found it persuasive that "in this case, assets were divided and necessary transfers were signed. There is no rational explanation for this other than that the parties were dividing their major community assets. [Elizabeth]'s testimony on this issue was credible, and in large part supported by documentary evidence." Furthermore, the parties were "unquestionably separated from each other" when the agreement was entered into.

The court then assigned values to and disposed of specific items of community property in accordance with the terms of the parties' agreement. The judge found that this resulted in an unequal division of community property because David ". . . came out ahead in this agreement."[4]

On December 21, 2007, the trial judge filed an order which denied David's request for a certificate of probable cause for immediate appellate review of this issue. On May 13, 2008, the trial court issued its final judgment on numerous issues. On June 17, 2008, David filed a notice of appeal.

---

[3] We emphasize that David has not challenged this finding on appeal. As a result, in this opinion, we assume the existence of a fully executed oral agreement to divide the parties' marital assets.

[4] More explicitly, the court found that under the parties' agreement, Elizabeth received community property worth $573,017 and David received community property worth $886,531. As can be inferred from the fact that David has filed this appeal, he "strongly disputes" this finding. However, he recognizes that the financial consequences of the parties' agreement have "absolutely no bearing" on his sole appellate argument that the parties' oral settlement agreement failed to meet the requirements of Family Code section 2550.

## III.  DISCUSSION

In this case, the trial court resolved many disputed issues with regard to the parties' community property by enforcing their fully executed oral agreement which was entered into after the date of separation. David contends that the trial court's "ruling directly violated Family Code section 2550."

Generally, we review a ruling dividing property under the abuse of discretion standard. (*In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 966 [22 Cal.Rptr.2d 537] (*Quay*).) Factual findings are upheld if supported by substantial evidence. (*Ibid.*) However, to the extent the trial court's decision reflects an interpretation of a statute, it presents a question of law that we review de novo. (*In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1371–1372 [40 Cal.Rptr.3d 910]; *In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 230 [70 Cal.Rptr.3d 881].)

Accordingly, we undertake our own statutory interpretation of Family Code section 2550, the statute governing an agreement entered into during a dissolution proceeding to divide the community assets. That section provides as follows: "*Except upon the written agreement of the parties, or on oral stipulation of the parties in open court*, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court *shall*, either in its judgment of dissolution of the marriage, in its judgment of legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, *divide the community estate of the parties equally*." (Italics added.)

■  Thus, Family Code section 2550 contemplates that the parties in a marital dissolution action can agree on a lopsided division of community property, but only if it is evidenced (1) by a written agreement of the parties; or (2) by an oral stipulation of the parties in open court. If such an agreement is entered into, the court *must* accept the parties' written agreement or in-court oral stipulation regarding the disposition of their property. (*In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 91 [16 Cal.Rptr.2d 575].) The court's "only role with regard to a proper stipulated disposition of marital property is to accept the stipulation and, if requested, to incorporate the disposition into the judgment." (*Id.* at p. 91.)

There is no evidence that the statutory requirements set out by Family Code section 2550 were met here. The record reveals that the parties in this dissolution action never reduced their agreement to writing, nor did they ever recite any stipulation for division of their community property in open court. David argues that the trial court's decision to uphold this agreement, which resulted in a disproportionate split of the parties' community property, ran afoul of Family Code section 2550 and should be overturned.

The court in *In re Marriage of Maricle* (1990) 220 Cal.App.3d 55 [269 Cal.Rptr. 204] (*Maricle*) addressed the same argument under circumstances almost identical to those present here. In *Maricle*, while the spouses' dissolution action was pending, they made an oral agreement without the knowledge of their attorneys. Pursuant to this agreement, they sold their residence and the wife received the proceeds, part of which she used to pay a community debt. They also agreed not to share their pension benefits. The agreement was performed by the parties the year it was made. (*Id.* at p. 57.)

More than three years later, during trial, their attorneys first learned about the agreement. The trial court found that the oral agreement had been entered into without any fraud, oppression or undue influence. Consequently, over the wife's objection, the court confirmed that the community interest in the residence and the parties' respective pension plans had been divided by the fully executed oral agreement, although there was no showing this resulted in an equal division. (*Maricle, supra*, 220 Cal.App.3d at p. 57.)

The Court of Appeal reversed, finding the agreement was legally unenforceable under Civil Code former section 4800, subdivision (a), the predecessor to Family Code section 2550.[5] The court held that Civil Code former section 4800, subdivision (a) required the court to divide the community estate equally, except upon the written agreement of the parties or on stipulation in open court. The parties had failed to meet any of the statutory requirements for enforcing an agreed-upon property division. The court explained that "[t]o allow the enforcement of a private oral agreement would sanction an exception to the statute not contemplated by the Legislature." (*Maricle, supra*, 220 Cal.App.3d at p. 58.)

The appellate court in *Maricle* also rejected an argument the trial court in this case found persuasive—that the parties' full execution of the oral agreement rendered Civil Code former section 4800, subdivision (a) inapplicable. The *Maricle* court explained why this particular theory was legally unavailing: "Husband attempts to avoid the application of [former] section 4800. He argues that because the proceeds from the sale of the residence and the pension plans were transmuted into separate property by the fully executed agreement, they did not come before the court as part of the community estate. This argument lacks merit. [¶] Those assets were part of the community estate at the time the [marital dissolution] action was commenced, and as such, their division was governed by [former] section 4800. The purpose of the statute is to prevent overreaching by one of the parties

---

[5] Civil Code former section 4800, subdivision (a) was repealed and reenacted as Family Code section 2550, and became operative January 1, 1994, without substantive change. (Stats. 1992, ch. 162, § 10, p. 464.)

and to ensure that the rights of a party are not dependent on faulty recollection or false testimony." (*Maricle, supra*, 220 Cal.App.3d at pp. 57–58.)

■ We adopt the reasoning in *Maricle*, and apply it to this case. Once a petition for dissolution has been filed, the community property needs to be divided, either by the parties or by the court. If the court divides the community property, it must do so equally. (See *Quay, supra*, 18 Cal.App.4th at p. 966.) If the parties themselves want to agree upon another disposition, they must do so either in writing or in open court. Neither requirement was met here. For this reason, we hold that the trial court erred in enforcing the parties' oral property settlement agreement.

We find the arguments made by Elizabeth do not persuade us to conclude otherwise. First, Elizabeth seeks to distinguish *Maricle* by noting that at the time the parties in *Maricle* executed their settlement agreement, they were represented by attorneys, whereas the parties in the instant case were still in propria persona. While *Maricle* mentions that "where a party is represented by an attorney of record, the court should not accept a stipulation or agreement made without the knowledge and consent of the attorney," the court's holding did not turn upon this circumstance. (*Maricle, supra*, 220 Cal.App.3d at p. 58.) Rather, its analysis focused on the statutory language and legislative purpose of Civil Code former section 4800, subdivision (a), the predecessor to Family Code section 2550.

In her brief, Elizabeth quotes at length from *In re Marriage of Hasso* (1991) 229 Cal.App.3d 1174 [280 Cal.Rptr. 919], and cites it for the proposition that "absent fraud, undue influence, or some other defense, there is simply no logical reason why the agreements, of which the written transfers are evidence, should not be recognized." However, the divorcing spouses in *Hasso* had executed a written, rather than an oral, agreement. (*Id.* at p. 1177.) Based on this important fact, the court in *Hasso* specifically distinguished *Maricle, supra*, 220 Cal.App.3d 55. (*In re Marriage of Hasso, supra*, at p. 1182.)

Moreover, against this backdrop, we reject a running theme in Elizabeth's brief that requiring strict compliance with Family Code section 2550 to defeat the parties' underlying oral agreement runs counter to the policy of encouraging settlements in marital dissolution cases. To the contrary, we believe that strictly enforcing Family Code section 2550's requirements will actually promote the policy of encouraging the parties to arrive at an out-of-court resolution containing sufficiently definite terms to be enforced by the court without further litigation. Requiring the parties' settlement agreement to be committed to writing or recited in court, as mandated by Family Code section

2550, prevents the risk of the court enforcing an agreement that never was made. Such was the danger encountered by the court here, where the court heard self-serving testimony by both spouses on the question of whether the parties had previously reached an oral agreement affecting the disposition of a significant amount of property. Courts accepting stipulations or reviewing written agreements can be satisfied that the parties acknowledge that such an agreement has been made.

■ Furthermore, Elizabeth persists in arguing that the exchange of deeds and other writings should be deemed valid transmutations. She argues "[w]here there is an executed oral agreement, which is manifested and implemented by written documents transferring assets in accordance with the agreement, there is no prohibition against a court's resolving any disputes as to the precise terms of the parties' agreement by their conduct." As Judge Hogoboom and Justice King explained in their treatise on family law, parties cannot transmute community property after the date a marital dissolution action commences: "That the undisclosed oral agreement was 'fully executed' does not effect a supposed 'transmutation' so as to avoid the application of Fam[ily] C[ode] [section] 2550. If the property at issue was part of the community estate *at the time the action was commenced*, the division is governed by [section] 2550 . . . ." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2008) ¶ 8:966, pp. 8-233 to 8-234 (rev. # 1, 2007), original italics.)

Elizabeth further claims that it would be unfair to reverse the judgment for failure to comply with the requirements of Family Code section 2550 when David has failed to show a "miscarriage of justice," referring to the constitutional standard set out in article VI, section 13 of the California Constitution.[6] In making this argument she relies primarily on *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519 [11 Cal.Rptr.3d 671] (*Steiner*). In *Steiner*, the court held that, notwithstanding Family Code section 2107, subdivision (d),[7] in the absence of "some reasonably specific articulated showing of a miscarriage of justice," the parties' failure to exchange final declarations of disclosure did not constitute reversible error (117 Cal.App.4th at pp. 525–526, fn. 3). The court concluded that Family Code section 2107,

---

[6] Article VI, section 13 of the California Constitution provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

[7] Section 2107, subdivision (d), states: "If a court enters a judgment when the parties have failed to comply with all disclosure requirements of this chapter, the court shall set aside the judgment. The failure to comply with the disclosure requirements does not constitute harmless error."

subdivision (d) was inconsistent with the "constitutional mandate embodied in article VI, section 13 of our state Constitution that no judgment may be set aside or new trial granted unless there has been a miscarriage of justice. [Citations.]" (117 Cal.App.4th at p. 526.) Accordingly, nondisclosure is a legitimate basis for vacating a judgment only if the moving party shows that he or she was prejudiced by the nondisclosure. (*Id.* at pp. 527–528.) And, noting that the appellant had not shown how she was prejudiced by the failure to exchange final disclosure statements, the court concluded that the nondisclosure alone was not a legitimate basis for reversal. (*Ibid.*)

Here, in contrast, David "vehemently disagrees that the alleged oral agreement constituted a favorable division of the community estate"; and he has explained in great detail how he was prejudiced by the court's enforcement of the parties' agreement. "Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice. [Citations.]" (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [87 Cal.Rptr.2d 754], as quoted in *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337 [98 Cal.Rptr.2d 136].) Because David has fulfilled his duty to tender a proper prejudice argument, we find the error here is not cured by the "miscarriage of justice" standard in article VI, section 13 of our state Constitution.

Lastly, David points out that one of the reasons he was sanctioned in the amount of $175,000 by the trial court under Family Code section 271 was for his rejection of Elizabeth's "reasonable settlement offer."[8] In seeking attorney fees, Elizabeth explained that she had offered David a settlement proposal, whereby she would accept child support at the present level and be responsible for her own attorney fees if David agreed "not to contest the property division which had been executed by deed and letters of transfer." She argued that his refusal to settle was "unreasonable and recalcitrant," which left her with "no recourse but to incur substantial legal fees" preparing for and litigating the issue during the bifurcated trial. In light of our disposition of this appeal, we agree with David that it is also necessary to vacate the court's ruling on sanctions, and to remand this case for further proceedings so the court can reconsider whether David's refusal to settle was "unreasonable and recalcitrant."

---

[8] Family Code section 271 provides, in pertinent part: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney[] fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. . . ."

## IV. DISPOSITION

The judgment is reversed and the trial court's imposition of sanctions is vacated. The case is remanded for further proceedings including a reconsideration of the court's sanction award under Family Code section 271. Each party to bear his or her own costs on appeal.

Reardon, J., and Sepulveda, J., concurred.

A petition for a rehearing was denied April 2, 2009, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied June 10, 2009, S172353.