Filed 6/30/15  Marriage of Meek CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of FRANKIE and GLORIA MEEK. | |
| FRANKIE MEEK, Respondent, v. GLORIA MEEK, Appellant. | E060508 (Super.Ct.No. VFLVS017413) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Alexander R. Martinez, Judge.  Affirmed in part; reversed in part with directions.

Law Office of Aaron M. Hudson and Aaron M. Hudson for Appellant.

Frankie Meek, in pro. per., for Respondent.

I

INTRODUCTION

Gloria Meek appeals judgment entered reducing her permanent spousal support to

1

$400 a month. Gloria contends the order reducing support was not in compliance with California Rules of Court, rule 5.92, subdivisions (b)(2) and (a)(4), and rule 5.260(a),[1] because Frankie Meek did not file a request for support modification, and no current income and expense declarations were filed. Gloria also argues Frankie did not meet his burden of establishing a change of circumstances, and the trial court erred in retroactively reducing her spousal support.

We conclude that the failure to file a request for modification of spousal support and current income and expense declarations does not constitute prejudicial error, because Frankie orally requested spousal support modification and the trial court notified the parties it was setting a spousal support modification hearing, to be conducted concurrently with the continued hearing on Gloria's request for arrears. Neither party objected to the combined hearing on arrears and modified spousal support; both parties participated by providing evidence and testifying.

We further conclude, however, that the trial court erred in awarding Gloria 13 months of arrears, based on the modified spousal support amount of $400, instead of the existing, accrued spousal support amount of $690.97 a month in out-of-pocket support, which Frankie stopped paying in October 2012. In effect, the trial court ordered modified spousal support of $400 a month, retroactive to October 2012, which was improper. Gloria was entitled to arrears in the amount of $690.97 a month, from October 2012 until October 30, 2013, when Frankie requested support modification.

---

[1] Undesignated rule references are to the California Rules of Court.

Therefore, the trial court order awarding arrears totaling $5,200 is reversed, with the trial court directed to enter an order of arrears in the amount of $8,982.61, for 13 months of spousal support arrears under the 2001 court order, which ordered Frankie to pay Gloria out-of-pocket spousal support in the amount of $690.97 a month.

The trial court spousal support modification order, reducing monthly out-of-pocket spousal support from $690.97 a month to $400 a month, is affirmed, with the exception the modified support is ordered retroactive to October 30, 2013, the date Frankie first requested support modification and the date the trial court noticed the support modification hearing for November 21, 2013.

II

FACTS AND PROCEDURAL BACKGROUND

Gloria and Frankie married in 1966, and separated in March 2000, after 34 years of marriage. In July 1999 Frankie filed a marital dissolution petition. The parties executed a marital settlement agreement, which was filed in July 2001. In August 2001, the parties stipulated and the trial court entered an order regarding Frankie's United States Air Force military retirement benefits (Air Force benefits). The Air Force benefits judgment stated Gloria had a 49 percent community property interest in Frankie's Air Force benefits, based on the date of the parties' marriage in 1966 and the date of Frankie's retirement from the military in July 1985. Frankie began employment with the federal government in February 1986, and retired in January 2012, at the age of 65 years old.

3

*A. 2001 Judgment of Dissolution*

The trial court entered judgment of marital dissolution on September 5, 2001, incorporating the terms of the parties' settlement agreement. The dissolution judgment included a spousal support order stating that Frankie was required to pay Gloria $1,400 in monthly spousal support. The spousal support order stated: "Of the $1,400.00 payable to [Gloria], [Gloria] shall prepare her Qualified Domestic Relations Order for her half of the community property share of [Frankie's] Air Force Military Retirement." The support order further states that, when Gloria began receiving her monthly retirement amount directly from the air force, Frankie was required "to pay in spousal support to [Gloria], the difference between the amount [Gloria] receives from the military up to the amount of $1,400.00 so that [Gloria] continues to receive $1,400.00 per month, part which comes from the Air Force Military Retirement and the other part from [Frankie]." The portion of support Frankie was required to personally pay, in excess of the Air Force benefits, was to be paid by Frankie from his current salary.

The judgment of dissolution also included an order regarding division of the parties' property. The court ordered that Frankie and Gloria were to receive their one-half community property interests in Frankie's Federal Employees Retirement System (FERS benefits) and Air Force benefits. The court ordered payment of benefits to commence as soon as administratively feasible. The trial court reserved jurisdiction over Frankie's retirement benefits until completely distributed.

On September 21, 2001, the court ordered the division of Frankie's FERS benefits. The court awarded Gloria her one-half community property share (27 percent), with her

4

benefits administered by the United States Office of Personnel Management (OPM) and paid directly to Gloria. The court also ordered dividing a thrift savings plan (TSP), administered through the Federal Retirement Thrift Investment Board. Gloria was awarded her one-half community property share of the TSP, valued at $41,392.51.

B. *Request for Order Determining Arrears*

On September 19, 2013, Gloria filed a request for an order determining spousal support arrears (request for arrears). Gloria stated in her request that she called Frankie on October 15, 2012, to tell him her alimony check was late. In response, Frankie told her he was not going to pay her anymore and she could take him to court. Attached to Gloria's request for arrears is a declaration of payment, claiming spousal support arrearages of $8,879.88, plus interest. The payment history showed Frankie paid Gloria support, as ordered, from July 2001 until October 2012. In October 2012, Frankie stopped sending Gloria the court-ordered monthly out-of-pocket support payments, which supplemented the spousal support income she received directly from Frankie's Air Force benefits.

Frankie filed a responsive declaration on October 10, 2013, contesting Gloria's request for arrears. Frankie stated in his supporting declaration that he paid Gloria $1,400 in court-ordered spousal support from February 2000 through September 2012. The support included Gloria's community property share paid from Frankie's Air Force benefits. Until Frankie retired in January 2012, he had paid the remainder of the $1,400 in monthly support by personal check. The OPM notified him in September 2012, that Gloria would be receiving benefits from FERS. Frankie called Gloria, informed her of

5

this, and told her he would therefore no longer send her personal checks for support, because she would be receiving FERS benefits, with her total support exceeding the court-order support amount of $1,400. In November 2012, Frankie received another notice from OPM, stating it would be paying Gloria FERS benefits, retroactive to January 2012, the date of Frankie's retirement. OPM would not give him a credit for the amount he had personally paid Gloria in spousal support during that period ($6,218.73).

Frankie further stated in his response declaration that Gloria had made numerous harassing phone calls to him after he stopped sending her personal checks for support, threatening to take him to court if he did not send her monthly personal checks for support. Frankie requested the court to order Gloria to reimburse him for the overages of $6,218 and to order Gloria to stop harassing him. Frankie noted he was in poor health and on medication for coronary artery disease, congestive heart failure, diabetes, and hypothyroidism. Frankie attached to his response a declaration of payment history, stating that in 2012 and 2013, Gloria received more than $1,400 a month in spousal support.

Also attached to Frankie's response were several documents, including a letter dated September 12, 2012, from OPM to Frankie, stating Gloria would receive, retroactively to January 2012, a monthly benefit payment of $650.15, consisting of her 27.26 percent share of Frankie's FERS monthly benefits ($2,385). Frankie also provided a letter dated November 3, 2012, from OPM to Frankie, confirming it had processed Gloria's claim for her court-awarded portion of his FERS benefits and she would receive a monthly benefit of $649.91, plus retroactive benefits from the date of Frankie's

6

retirement ($6,499.10), to be paid in 36 monthly installments. Also attached to Frankie's response were OPM notices and summaries of payments, beginning in October 2012, notifying Frankie of the amount of his FERS monthly annuity, deductions (including Gloria's court-ordered apportionment), and Frankie's net monthly annuity. As of June 2013 Frankie's FERS gross monthly annuity totaled $2,423. Gloria received a court-order apportionment of $806.34. Frankie's net monthly annuity, after all deductions, amounted to $937.83.

## C. *Hearing on Request for Order Determining Arrears*

On October 30, 2013, the trial court held a hearing on Gloria's request for arrears. Gloria testified Frankie stopped paying the full amount of court-ordered spousal support because Frankie retired from the United States Department of Defense. Frankie explained he did not stop paying the court-ordered support when he retired. It was still being paid. In fact, according to Frankie, Gloria was receiving more than the $1,400 amount the court had ordered. Frankie stated that support was being paid from his Air Force benefits and from his FERS benefits. Gloria acknowledged she had started receiving her share of FERS benefits. Gloria argued that, nevertheless, she was supposed to get an additional $690 a month in spousal support paid by personal check by Frankie, as originally ordered by the court.

Frankie testified that, originally, Gloria received payment each month of 49 percent of his Air Force benefits, which was paid directly to Gloria. Frankie paid Gloria by personal check $690.97, the difference between the $1,400 court-ordered monthly support amount and the monthly Air Force benefits paid to Gloria. After Frankie retired,

7

OPM notified him Gloria filed for and was awarded her share of the benefits from FERS. Entitlement to Frankie's FERS benefits began in January 2012, when he retired. Gloria's FERS share of benefits was deducted from Frankie's FERS benefits and paid directly to Gloria beginning in October 2012, with payment of FERS benefits retroactive to January 2012.

The trial court noted Frankie had not filed a motion for reimbursement of the money paid to Gloria in excess of the $1,400 spousal support award. Frankie said he was arguing that once he retired and Gloria began receiving FERS benefits, he was no longer required to pay Gloria by personal check for support. Frankie acknowledged Gloria was entitled by law to receive a portion of his Air Force benefits and FERS benefits. Gloria already received one-half of the TSP. Gloria confirmed she was receiving $677 a month from Frankie's Air Force benefits and $660 a month in FERS benefits.

Frankie stated that, at the time of the 2001 divorce judgment, he did not know Gloria would file for the FERS benefits when he retired. Frank acknowledged he was employed by the Department of Defense while married to Gloria and she was entitled to a share of his FERS benefits. He explained that, in fairness, if she was now receiving FERS benefits, she no longer needed a $690 monthly check from Frankie, and her FERS payment came directly out of his FERS benefits, which he received instead of a paycheck, because he had retired. The trial court acknowledged it seemed fair to substitute the FERS benefits for the court-ordered $690 personal check from Frankie, and Frankie should no longer be required to pay Gloria the monthly $690 out-of-pocket support. The court noted it had previously ruled similarly in another case and the order

8

had been determined to be incorrect. The trial court therefore concluded Gloria's support award was separate from her court-ordered share of Frankie's retirement benefits.

The trial court therefore concluded changing the court-ordered support, which currently required Frankie to pay Gloria personally $690 a month, would require a more in-depth hearing on modification of support under Family Code section 4320,[2] which could not be done during the current arrears hearing. The court explained that in order to consider modifying support, it would need to consider a variety of factors, including whether there were changed circumstances. The court stated it would continue the hearing and then determine if Gloria had not received the amount of support she was entitled to, in which case she would be entitled to the arrears of $690.97 a month in unpaid support Gloria was claiming. The court would also determine if Frankie had overpaid the amount of court-ordered support, in which case he would be entitled to reimbursement for the excess amount. The court told the parties another hearing on spousal support was required, during which the court would consider the section 4320 support modification factors, which the court recommended the parties review before the next hearing. The court set the evidentiary hearing on spousal support for November 21, 2013. The parties were ordered to bring to the support hearing whatever documents they wanted the court to review.

The court also scheduled a hearing on November 15, 2013, during which Gloria was permitted to appear telephonically because she said she would be on vacation in

---

[2] Unless otherwise noted, all statutory references are to the Family Code.

9

Florida. The hearing was for the purpose of confirming the parties would be going forward with the spousal support hearing on November 21, 2013.

On November 15, 2013, Frankie appeared for the status hearing. Gloria did not attend the hearing or appear by phone. Frankie asked if the trial court was going to make a spousal support determination at the hearing on November 21, 2013. The court said it would make a final determination based upon the evidence presented but it might not occur on November 21, 2013, the initial day of the evidentiary hearing, if the hearing lasted more than one day. Frankie asked if the court would be considering a reduction in spousal support. The court explained that the hearing would be a spousal support hearing in which the court would make a final ruling on the appropriate amount of spousal support.

Frankie requested a continuance of the November 21, 2013 support hearing until the first of the year. The court said the first available hearing date was March 4, 2014. The court then reconsidered continuing the hearing and noted that Gloria might not want the support hearing continued, and asked why Frankie wanted a continuance. Frankie said he might need to retain an attorney to evaluate the impact a potential change in support might have on him. Frankie added that he would not have access that soon to bank information he would need. The court noted that if the hearing was postponed and the court ruled Gloria was entitled to increased support, the court order would be retroactive. Frankie then told the court he would like to go ahead with the hearing on November 21, 2013, because, based on what the court stated, he had decided he would not need an attorney.

10

*D. Evidentiary Hearing on Spousal Support and Arrears*

On November 21, 2013, the trial court held a spousal support hearing. Both parties appeared in propria persona. The trial court explained that Gloria had filed a request for arrears and Frankie believed spousal support should be lowered because Gloria had begun receiving FERS benefits. The trial court therefore had set a spousal support modification hearing because Frankie was actually requesting modification of permanent spousal support. Gloria testified that up until October 1, 2012, she had received $1,400 a month in spousal support. A portion of that support was paid from Frankie's Air Force benefits. While Frankie was working for the Department of Defense, the remainder was paid by Frankie by personal check.

Gloria said Frankie stopped giving her a check for support as of October 2012, because Frankie had retired from the Department of Defense in December 2011. Beginning on October 1, 2012, she only received $667 a month in Air Force benefits. In November 2012, Gloria started receiving her portion of Frankie's FERS benefits. She began receiving $660 a month in FERS benefits, along with the $667 in monthly Air Force benefits, for a total of $1,327.

Gloria stated that, because Frankie stopped sending her a check for spousal support, she was in the process of losing her home. The court noted that, in effect, she was currently receiving only $73 less than the $1,400 in monthly support she received when Frankie was working and sending her a check. Gloria said $1,327 was not sufficient to pay her mortgage and food expenses. However, Gloria also said she was able to pay her mortgage and pay for her food and other expenses with $1,400 in support.

11

She did not know why the $73 shortage made such a difference and resulted in financial ruin for her. The court noted that in order to change spousal support, the court was required to ask probing questions about Gloria's past and current financial situation.

The spousal support hearing was continued to November 25, 2013, for additional testimony. The trial court granted Gloria's request for a telephonic appearance. The hearing on November 25, 2013, was not recorded because Gloria, as the party who previously requested a court reporter, was required to pay the court reporter's fee and Gloria did not appear, either in person or by telephone. Frankie's testimony that day therefore was not recorded. The hearing was continued to the following day. During the third day of trial on November 26, 2013, the court called Gloria and explained to her that the hearing, which had been continued to November 25, 2013, went forward in Gloria's absence, with Frankie testifying. The court continued the hearing to November 26, 2013, for the purpose of ruling on the matter.

Gloria responded that she had called the court the day before and informed the clerk that she was unable to appear for the hearing because she was in no condition to drive to Victorville as a result of injuries sustained in a serious car accident a year earlier. The court stated that it proceeded with the matter because Gloria did not appear by phone at the time of the hearing. The court noted Gloria had appeared in court at least twice before, including the first day of the evidentiary hearing on the spousal support matter on November 21, 2013. In addition, the court had permitted her to appear by phone and she was not available by phone at the time of the hearing. The court therefore proceeded with ruling on spousal support during the hearing on November 26, 2013.

12

The court found that the marriage was a long-term marriage of over 33 years. Gloria was primarily a stay-at-home homemaker and did not work outside the home. At the time of the 2001 dissolution judgment, the court awarded Gloria $1,400 in spousal support, which included a monthly payment of Air Force benefits. In addition, the court awarded Gloria her community property share of Frankie's FERS benefits. In 2012 Frankie retired at age 65 years from the Department of Defense and stopped paying the out-of-pocket portion of the court-ordered $1,400 monthly support. This resulted in Gloria receiving just $667 in monthly Air Force benefits. However, in November 2012 Gloria began receiving $660 a month in FERS benefits, resulting in Gloria receiving $1,327 in monthly support. This was only $73 less than the $1,400 support originally ordered by the court in 2001. The court found Gloria's testimony, that this $73 shortage led to her financial ruin, not credible.

The trial court stated it was required to first determine the marital standard of living. In doing so, the court reviewed the record, including the parties' previous list of assets, and concluded the Meeks had enjoyed a middle class marital standard of living. The court stated that, "[a]s to the requested modification [of] permanent spousal support, the Court has examined each of the factors pursuant to Family Code Section 4320." In determining whether to modify spousal support, the court then discussed each of the section 4320 factors. In considering Gloria's earning capacity, the court found that Gloria, who was 70 years old and retired, did not have substantial marketable job skills and was not able to acquire the education or training needed to develop new job skills at her age. Gloria devoted the majority of her marital years caring for her home and

13

children. This, along with her age, impacted her present and future earning capacity.

The court found that both parties were retired and not earning income sufficient to sustain their marital standard of living. Right before retirement, Frankie earned $111,000 a year or $9,250 a month, gross. He was currently receiving, postretirement, $4,700 a month, gross, from his Air Force and FERS retirement plans and Social Security. This amount approximated what he was earning in 2001, at the time of the parties' divorce (apparently, after the divorce, Frankie's income increased significantly). Frankie continued, pursuant to the 2001 divorce judgment, to make monthly, out-of-pocket payments of premiums for life insurance policies, in which Gloria was the beneficiary upon his death. Frankie received a net monthly income of $3,434. The court noted his income and expense declaration in 1999, before the divorce, stated he had a monthly net disposable income of $4,078, which was only $644 more than Frankie's current income.

The court stated that, as to Gloria, she received $1,327 per month, which was two and a half times less than what Frankie received. The court found that the earning capacity of Frankie, who was 65 years old, was substantially less due to retirement and health issues. He had $80,000 in an IRA account and deposited $50 a month into a savings account. Frankie was able to maintain the marital standard of living. Gloria was maintaining a standard of living slightly lower than the marital standard of living. In evaluating the parties' obligations and assets, the court noted only limited evidence was presented to the court. In fact, there was virtually no evidence presented as to Gloria's obligations and assets. The evidence indicated she had lived in Las Vegas for the past 10 years and owned a single family home. Frankie owned a home in Apple Valley, along

14

with an $80,000 IRA.  There was no evidence presented as to Gloria's health.  Frankie had suffered two heart attacks, was diagnosed with potential congestive heart failure, and had diabetes.

Based on the record and the court's findings as to each of the section 4320 factors considered in determining whether to modify spousal support, the court concluded it was appropriate for Frankie to continue paying spousal support to Gloria but only $400 a month out-of-pocket, effective October 1, 2012.  Since Frankie stopped paying his out-of-pocket portion 13 months earlier, the court found that he owed Gloria arrearages of $400 times 13 months, for a total of $5,200.

On February 28, 2014, the trial court entered the following spousal support order reflecting the court's ruling on November 26, 2013:  "Frankie . . . is ordered to pay as and for spousal support the sum of $400.00 per month, payable one-half on the 1st and one-half on the 15th days of each month, commencing December 1, 2013 and continuing until the death of either party, remarriage of Gloria . . . or further order of the court.  Spousal support is in addition to retirement funds paid by [Frankie] to [Gloria].  Court finds [Frankie] owes spousal support arrearages to [Gloria] in the sum of $5200.00 which shall be paid in quarterly amounts of $1,300.00 commencing January 1, 2014 and continuing until paid in full."  Gloria appealed the November 26, 2013 spousal support and arrears order, instead of the February 28, 2014 order, which is essentially identical to the November 26, 2013 minute order.

15

III

NONCOMPLIANCE WITH PROCEDURAL REQUIREMENTS

FOR MODIFYING SPOUSAL SUPPORT

Gloria contends the trial court erred in modifying spousal support because she was deprived a fair hearing as a consequence of Frankie and the court not following California Rules of Court procedural requirements.

*A. Request for an Order to Modify Spousal Support*

Gloria argues she was deprived of a fair hearing because neither party filed a request for an order to modify spousal support. Rather, the trial court sua sponte set the hearing to modify spousal support, in violation of rule 5.92. Subdivision (a) of rule 5.92 provides in relevant part: "(1) In a family law proceeding . . ., a notice of motion or order to show cause must be filed on a *Request for Order* (form FL-300) . . . [¶] . . . [¶] (4) The *Request for Order* (form FL-300) must set forth facts sufficient to notify the other party of the declarant's contentions in support of the relief requested." Gloria asserts that she filed a request for arrears, not a request for modification of spousal support, and Frankie's response to her request for arrears did not request modification of spousal support. Gloria maintains it was not until the hearing on November 21, 2013, that Frankie orally requested modification of support. There was no compliance with rule 5.92, requiring one of the parties to file a notice of motion for support modification.

It does not necessarily follow, however, that the failure to comply with rule 5.92 constitutes a deprivation of due process and a fair hearing on support modification. (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1419; *In re Charles B.* (1986) 189 Cal.App.3d

16

1204.) "'A failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause. [Citations.]' [Citation.]" (*Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 546.) Due process only requires "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citation.]" (*In re A.S.* (2012) 205 Cal.App.4th 1332, 1342.)

Here, the record shows that, although neither of the parties filed a request to modify spousal support, Frankie indicated he wanted the court to consider modification of spousal support at the initial hearing on arrears on October 30, 2013, and the trial court agreed at that time to set a support modification hearing on November 21, 2013. Both parties therefore received notice of the evidentiary support modification hearing at the hearing on October 30, 2013. When the trial court conducted an initial hearing on Gloria's request for arrears on October 30, 2013, the need for modification of spousal support became apparent and, at the trial court's suggestion and Frankie's request, the parties indicated a willingness to allow the court to consider support modification concurrently with the determination of arrears. The trial court suggested considering modification of spousal support concurrent with Gloria's request for support arrears, since Frankie was arguing he was not required to pay arrears or out-of-pocket support because, after Frankie retired, Gloria's support award was satisfied by receipt of her share of increased pension benefits. The parties did not object to continuing the hearing from

17

October 30, 2013, to November 21, 2013, for the purpose of hearing both Gloria's request for arrears and Frankie's oral request for support modification.

We conclude there was substantial evidence that the parties received notice of the spousal support modification hearing, and that it would be heard concurrently with Gloria's request for arrears on November 21, 2013, with a prehearing on November 15, 2013. The prehearing was to confirm the evidentiary hearing would go forward on November 21, 2013. The record further shows that Gloria received a fair hearing on modification of spousal support. The court permitted the parties to submit evidence regarding support modification at the hearing, including allowing the parties to testify and present supporting documentation.

Although rule 5.92, subdivision (a) states that a party seeking modification of support must file a request for an order to modify support, in the instant case, the parties received oral notice of the motion and implicitly agreed to the trial court deciding support modification and arrears on the date set for the combined evidentiary hearing, commencing on November 21, 2013. Noncompliance with rule 5.92, therefore, does not require reversal of the support modification order. Gloria received notice of the combined evidentiary hearing on modification of spousal support and arrears, she did not object to the hearing, and she has not demonstrated the hearing was unfair.

B.  *Absence of Current Income and Expense Declarations*

Gloria contends the trial court erred in modifying spousal support because the parties did not file current income and expense declarations, in violation of rule 5.260(a). Rule 5.260(a) requires that current income and expense declarations be on file before a

18

support order issues.  (See rule 5.92(a)(5)[3] and *Marriage of Left* (2012) 208 Cal.App.4th 1137, 1152-1153.)  "Current" is defined by rule 5.260(a)(3) as "completed within the past three months providing no facts have changed."

Rule 5.260(a) does not state that failure to file current income and expense declarations requires automatic reversal of a support order.  Section 2105, however, provides in relevant part:  "(a) Except by court order for good cause, before or at the time the parties enter into an agreement for the resolution of property or support issues other than pendente lite support, or, if the case goes to trial, no later than 45 days before the first assigned trial date, each party, or the attorney for the party in this matter, shall serve on the other party a final declaration of disclosure and a current income and expense declaration, executed under penalty of perjury on a form prescribed by the Judicial Council, unless the parties mutually waive the final declaration of disclosure."  (§ 2105, subd. (a).)  Subdivision (c) of section 2105 states:  "In making an order setting aside a judgment for failure to comply with this section, the court may limit the set aside to those portions of the judgment materially affected by the nondisclosure."  Section 2107, subdivision (d) provides in relevant part:  "Except as otherwise provided in this subdivision, if a court enters a judgment when the parties have failed to comply with all disclosure requirements of this chapter, the court shall set aside the judgment.  The failure to comply with the disclosure requirements does not constitute harmless error."

---

[3] Rule 5.92(a)(5) provides:  "A completed *Income and Expense Declaration* (form FL-150) or *Financial Statement (Simplified)* (form FL-155) must be filed with the *Request for Order* (form FL-300) when relevant to the relief requested unless a current form is on file with the court."

Here, neither party objected to noncompliance with the requirement to file a current declaration of disclosure or an income and expense declaration (disclosure declarations). The record on appeal is unclear as to whether current disclosure declarations were provided prior to the 2013 hearing and order modifying spousal support. The partial transcript of the spousal support modification hearing[4] suggests neither party filed current disclosure declarations. There is no mention of current disclosure declarations in the reporter's transcript and there are no such documents in the clerk's transcript. The record also does not show that the trial court ordered, based on good cause, that the parties were not required to file current disclosure declarations. Nevertheless, noncompliance with the statutory requirement to file current disclosure declarations does not require reversal of the spousal support modification order.

We recognize that, under limited circumstances inapplicable here, the Family Code mandates setting aside a support judgment when the parties have failed to comply with all section 2100 et seq. disclosure requirements. The Family Code states that noncompliance "does not constitute harmless error" (§ 2107, subd. (d)). This provision was enacted (eff. 2002) in an attempt to supersede prior case law affirming judgments under a "harmless error" standard despite a violation of the disclosure statutes. (See *Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 526 (*Steiner*).)

Nonetheless, statutes cannot preempt constitutional requirements. Pursuant to the

---

[4] There is no transcript of the second day of the evidentiary hearing on November 25, 2013, because Gloria did not appear at the hearing and there was no request for a court reporter on that day.

California Constitution, no judgment may be set aside or new trial granted unless there has been a miscarriage of justice. (Cal. Const. Art. VI, § 13; *Steiner*, supra, 117 Cal.App.4th at p. 526 ["The California Constitution trumps any conflicting provision of the Family Code"].) Thus, notwithstanding section 2107, subdivision (d), a party seeking set-aside relief or reversal on appeal for noncompliance with the statutory disclosure requirements, must show some prejudice as a result of the nondisclosure. The party seeking to set aside the support judgment must identify some portion of the judgment materially affected by the nondisclosure. (*Steiner*, *supra*, 117 Cal.App.4th at p. 528; *Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 92.) Here, even assuming the parties violated section 2105 by failing to provide disclosure declarations, this court may set aside only those provisions of the support modification judgment "materially affected by the [circumstances]" leading to the decision to grant relief. (§ 2105, subd. (c).)

In *Steiner*, the appellate court held that, notwithstanding section 2107, subdivision (d), in the absence of "some reasonably specific articulated showing of a miscarriage of justice," the parties' failure to exchange final declarations of disclosure did not constitute reversible error. (*Steiner*, *supra*, 117 Cal.App.4th at pp. 525-526, fn. 3.) The court concluded that section 2107, subdivision (d) was inconsistent with the "constitutional mandate embodied in article VI, section 13 of our state Constitution that no judgment may be set aside or new trial granted unless there has been a miscarriage of justice. [Citations.]" (*Id.* at p. 526; accord, *In re Marriage of Dellaria* (2009) 172 Cal.App.4th 196, 205 (*Dellaria*).)

Article VI, section 13, of the California Constitution provides: "No judgment

21

shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." Nondisclosure is therefore a legitimate basis for vacating a support judgment only if the moving party shows he or she was prejudiced by the nondisclosure. (*Steiner*, *supra*, 117 Cal.App.4th at pp. 527-528; *Dellaria*, *supra*, 172 Cal.App.4th at pp. 204-205.) The court in *Steiner* concluded the appellant had not shown how she was prejudiced by the failure to exchange final disclosure statements and therefore the nondisclosure alone was not a legitimate basis for reversal. (*Steiner*, at pp. 527-528.)

Gloria bears the duty of showing on appeal "exactly how the error caused a miscarriage of justice." (*Dellaria*, *supra*, 172 Cal.App.4th at p. 205, quoting *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) Because Gloria has not met her burden of showing a miscarriage of justice or prejudice, the parties' failure to file disclosure declarations does not support reversal in this case. (*Dellaria*, at pp. 204-205; *Steiner*, *supra*, 117 Cal.App.4th at pp. 524, 527-528; *Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 403 [recognizing that filing an income and expense declaration is "not a jurisdictional requirement" and that "although a rule of court phrased in mandatory language is generally binding on the courts, departure from the rule is not reversible error unless prejudice is shown"].)

During the support modification hearing, the trial court permitted the parties to

present evidence regarding modification of spousal support and arrearages, including their own testimony and documentation. The hearing took place over three days and the trial court addressed each of the support factors enumerated in section 4320. Both parties testified as to their financial circumstances, Frankie submitted documentation of pension benefits, Gloria filed a declaration of payment history, and Frankie filed a responding declaration. Gloria did not file disclosure declarations, did not request Frankie to do so, and did not object to noncompliance with the disclosure requirements.

Gloria has not shown that any portion of the support modification judgment was materially affected by the parties not submitting current disclosure declarations or that there was any prejudice or miscarriage of justice. The record does not show any fraud, concealment, or misrepresentation of the parties' income or property. We therefore reject Gloria's contention that noncompliance with rule 5.260(a), requiring current income and expense declarations, constitutes reversible error.

IV

CHANGE OF CIRCUMSTANCES

Gloria contends the trial court was precluded from modifying spousal support because Frankie failed to demonstrate material changed circumstances. We disagree.

A. *Applicable Law Regarding Support Modification*

Section 4330, subdivision (a), provides that, in a judgment of marital dissolution of marriage, a court may order spousal support based on the standard of living established during the marriage, taking into consideration the circumstances stated in section 4320, which include, among others, "[t]he extent to which the earning capacity of each party is

23

sufficient to maintain the standard of living established during the marriage" (§ 4320, subd. (a)); "[t]he ability of the supporting party to pay spousal support" (§ 4320, subd. (c)); [t]he needs of each party based on the standard of living established during the marriage" (§ 4320, subd. (d)); "[t]he duration of the marriage" (§ 4320, subd. (f)); and "[t]he goal that the supported party shall be self-supporting within a reasonable period of time" (§ 4320, subd. (*l*)).

"Except on written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage . . . where the marriage is of long duration." (§ 4336, subd. (a).) The trial court may grant a request for modification of spousal support only if there has been a material change of circumstances since the last support order. (*In re Marriage of Khera and Sameer* (2012) 206 Cal.App.4th 1467, 1475.) "Otherwise, dissolution cases would have no finality and unhappy former spouses could bring repeated actions for modification with no burden of showing a justification to change the order. Litigants "'are entitled to attempt, with some degree of certainty, to reorder their finances and life style [*sic*] in reliance upon the finality of the decree."' [Citation.] Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order. [Citation.]" (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480; in accord, *Khera, supra,* 206 Cal.App.4th at p. 1479.) "'A material change of circumstances may be in the form of unrealized expectations.'" (*Khera*, at p. 1475, quoting *In re Marriage of Beust* (1994) 23 Cal.App.4th 24, 29.) However, circumstances accounted for in a previous final support order cannot constitute a change

of circumstances. (*In re Marriage of Lautsbaugh* (1999) 72 Cal.App.4th 1131, 1133; *Khera*, at p. 1476.)

"Appellate review of orders modifying spousal support is governed by an abuse of discretion standard, and such an abuse occurs when a court modifies a support order without substantial evidence of a material change of circumstances." (*In re Marriage of McCann* (1996) 41 Cal.App.4th 978, 982-983; accord, *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 398 (*Dietz*).)

*B. Analysis*

Here, there was no agreement or court order terminating spousal support, and Gloria and Frankie's 34-year marriage was a long-term marriage (§ 4336, subd. (b)). The trial court thus retained jurisdiction to modify spousal support upon a showing of changed circumstances. Gloria argues that the only change in circumstances since the 2001 spousal support order was that she began receiving FERS benefits in 2012. Gloria asserts that her receipt of FERS benefits does not constitute a changed circumstance sufficient to modify spousal support because the 2001 dissolution judgment specifically adjudicated the division of Frankie's FERS benefits and awarded Gloria her community property share. The trial court further ordered that payment of her share of FERS benefits was to commence as soon as administratively feasible.

A supporting party's retirement or termination of gainful employment may be a sufficient changed circumstance to warrant a decrease in or termination of the support obligation. The result turns on a consideration and weighing of all of the statutory spousal support factors (§ 4320) in light of the underlying circumstances. (*Marriage of*

25

*Stephenson* (1995) 39 Cal.App.4th 71, 77-78; *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 51 (*Schmir*); *Dietz*, *supra*, 176 Cal.App.4th at pp. 404-405.) Here, there was substantial evidence demonstrating changed circumstances, consisting of Frankie retiring, Frankie no longer receiving an employment paycheck, and Gloria and Frankie receiving FERS benefits after Frankie retired.

In determining whether to modify spousal support in *Schmir*, the trial court found a change of circumstances based on the wife's ability to draw from her individual retirement account without penalty. (*Schmir*, *supra*, 134 Cal.App.4th at p. 50.) On appeal, the wife argued her ability to make penalty-free withdrawals from her retirement account was not a change in circumstances because the parties must have contemplated when they entered into their previous support agreement that the wife would reach the age when she could begin making withdrawals from the account without penalty. Therefore her reaching the requisite age was not a change in circumstance but merely an aspect of the same circumstance existing at the time of the original support order. (*Id.* at p. 51.)

The *Schmir* court rejected this contention, stating, "Adopting [the wife's] line of reasoning would mean that as a matter of law the supporting spouse's attainment of retirement age could never constitute a change of circumstance for purposes of a motion to modify a support order. Numerous appellate court decisions have rejected such a result even though the parties in those cases clearly contemplated the supporting spouse would one day reach the age when he or she could legitimately retire." (*Schmir*, *supra*, 134 Cal.App.4th at p. 51, fn. omitted; see also *In re Marriage of Reynolds* (1998) 63

26

Cal.App.4th 1373, 1379.)

In discussing *Schmir*, the court in *Dietz* stated: "We agree with *Schmir* that a supporting spouse's attainment of retirement age may constitute a material change of circumstances for purposes of a motion to modify a support order, depending on the circumstances of a given case. The loss of income as a result of a supporting spouse's retirement at an appropriate age might be such a case. We do not agree, however, that such a proposition establishes as a matter of law that a *supported* spouse's attainment of the age by which retirement accounts divided in a marital settlement agreement might be accessed without penalty automatically constitutes a material change of circumstances." (*Dietz*, *supra*, 176 Cal.App.4th at p. 404, fn. omitted.)

The court in *Dietz* concluded that the trial court's order reducing the husband's spousal support obligation was not supported by substantial evidence of a material change of circumstances. (*Dietz*, *supra*, 176 Cal.App.4th at p. 405.) The *Dietz* court explained that in 1999 the parties agreed to an equal division of their community property interest in the retirement accounts and, as of the time of the hearing in 2008 on modification of spousal support, both parties had reached the age by which they could access the retirement accounts without penalty. The parties had bargained for the equal division of their retirement accounts in the 1999 stipulated judgment with the expectation that they each would be able to access the retirement accounts without penalty at 59 and a half years old. (*Ibid.*)

*Dietz* is inapposite in that the court was concerned with the increased value of retirement securities, the ability to access retirement accounts without penalty at a certain

27

age, and the parties' expectations of doing so. The *Dietz* court acknowledged "that there might be a case where the trial court could properly exercise its discretion to impute reasonable withdrawals from retirement accounts as additional income for purposes of modifying spousal support" (*Dietz*, *supra*, 176 Cal.App.4th at p. 405), such as when a spouse retired and no longer received a salary, as in the instant case.

Unlike in *Dietz*, here, the original support order did not take into account additional income Gloria would receive from Frankie's FERS benefits when Frankie retired, or the reduction in Frankie's income upon retirement. The original support order only took into consideration Gloria and Frankie's income at the time of the 2001 support order, which included the Air Force benefits Frankie and Gloria were receiving and Frankie's salary. The 2001 support order did not contemplate the distribution of future civil service FERS benefits, because Frankie was still employed. The record demonstrates that, although the 2001 judgment included the division of Frankie's FERS account, the future distribution of FERS benefits was not contemplated when calculating Gloria's spousal support in 2001, because the FERS benefits, unlike the Air Force benefits, were not a current source of income for either Frankie or Gloria.

Therefore even though it was contemplated that Frankie would eventually retire and Gloria would receive her community property share of FERS benefits, Frankie's reduced income from retiring and Gloria's increased income from receiving FERS benefits constituted changed circumstances for purposes of modifying spousal support under section 4320.

28

V

RETROACTIVE ORDER AWARDING SPOUSAL SUPPORT

Retroactive effect of any modification or revocation of spousal support is normally limited to the date of filing notice of a motion or order to show cause for support modification. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 369; §§ 3651, subd. (c)(1), 3653, subd. (a), 4333.) "The modification of a support order can only be prospective, i.e., it cannot affect amounts previously accrued." (11 Witkin, Summary of Cal. Law (10th ed. 2005) Husband and Wife, § 276, p. 358, citing § 3651, subd. (c), several cases, and secondary sources.) "The rationale for this rule with respect to modification or revocation is clear: the spouse receiving support has the right to collect the support, judicially approved by a prior court order, until he or she is put on notice that the supporting spouse is seeking to change the status quo because of a change of circumstances." (*In re Marriage of Goosmann* (1994) 26 Cal.App.4th 838, 843.)

In recent years, section 3653, which precludes retroactive application of modification of support orders, has been amended to account in some detail for two recurring "exceptional" situations that invite modification of preexisting alimony awards. Section 3653, subdivision (b), enacted in 1998, provides that a modification based on loss of employment must be made retroactive to the *later* of the (1) date of filing the request for modification or (2) date of unemployment, "unless the court finds good cause not to make the order retroactive and states its reasons on the record."

Here, notice of the support modification hearing was provided by the trial court on October 30, 2013, when Frankie orally requested modification of spousal support at the

29

initial hearing on arrears, based on his retirement in January 2012. The record shows that the court and parties contemplated support modification would be heard on November 21, 2013, concurrently with Gloria's request for arrears. Therefore, retroactive effect of the trial court's support modification order was limited to the date of the trial court notice on October 30, 2013, when the trial court informed the parties it would conduct the evidentiary hearing on modification of spousal support on November 21, 2013, with a prehearing conference on November 15, 2013.

Because modified support could not be ordered retroactive to a date prior to the date of Frankie's request to modify spousal support, the trial court's order allowing arrearages based on the reduced monthly out-of-pocket support award was improper as to the period of time preceding October 30, 2013. Gloria is entitled to 13 months of support arrears under the 2001 order, of $690.97 a month, from January 1, 2012, until October 30, 2013, when Frankie requested support modification. Thereafter Gloria was entitled to $400 in monthly out-of-pocket support from Frankie, pursuant to the trial court order on November 26, 2013, modifying spousal support.

The trial court's order limiting Gloria's arrears to $400 a month in spousal support, retroactive to January 2012, amounted to an impermissible retroactive modification that cut off Gloria's ability to enforce arrears incurred under the 2001 support order and improperly forgave a portion of Frankie's outstanding debt. Upon retiring or shortly before, Frankie could have requested the court to reduce support payments due. He failed promptly to do so and therefore must pay arrears of $690.97 a month in unpaid support, which continued accruing under the 2001 support order until

30

Frankie requested modification of support on October 30, 2013. (See *In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 80-81.)

VI

DISPOSITION

The judgment is affirmed in part and reversed in part as follows:

1. The trial court order awarding Gloria arrears totaling $5,200, is reversed. The trial court is directed to enter an order of arrears in the amount of $8,982.61, for 13 months of unpaid out-of-pocket spousal support under the 2001 spousal support order (13 x $690.97), which accrued during the period of January 1, 2012, until October 30, 2013.

2. The trial court spousal support modification order, reducing Gloria's monthly out-of-pocket spousal support from $690.97 a month to $400 a month, is affirmed, with the exception that the modified spousal support is ordered retroactive to October 30, 2013, the date Frankie requested support modification and the date the trial court noticed the support modification hearing.

The parties are ordered to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

McKINSTER
J.

31