Filed 5/7/14  Mills-Luiz v. Thomas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

> **California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| BARBARA MILLS-LUIZ, | |
| Plaintiff and Respondent, | C071381 |
| v. | (Super. Ct. No. SCSCCVGV11476) |
| ANNIE THOMAS, | |
| Defendant and Appellant. | |

Barbara Mills-Luiz (grandmother) filed a petition for visitation in the trial court, seeking regular visits with her minor grandchild after grandmother's son (father) died. Annie Thomas (mother) opposed grandmother's petition for visitation.  Following an evidentiary hearing, the trial court found that regular visitation with grandmother was in grandchild's best interest and granted grandmother's petition for visitation.

Mother now contends (1) the trial court erred in failing to require grandmother to prove, by clear and convincing evidence, that mother's visitation decision was

1

detrimental to grandchild; (2) the trial court infringed on mother's fundamental right to determine the amount and quality of grandchild's time with third parties; and (3) the amount and frequency of the imposed visitation excessively interferes with mother's parenting.

We will affirm the visitation order because mother does not articulate how any error by the trial court resulted in a miscarriage of justice. Absent such a showing, mother has not met her burden on appeal.

BACKGROUND

The background is summarized from the documents filed in connection with grandmother's petition for visitation and from the trial court's written decision following the unreported evidentiary hearing on that petition.

Mother and father lived together at the time of their son's birth in April 2007, and for a few months thereafter, in an apartment across the street from grandmother's home. During those months, grandmother had daily contact with her grandchild. After mother and father moved away, grandmother cared for grandchild while his parents attended community college classes.

When grandchild was 10 months old, mother and father separated. Father died in March 2008. Grandmother filed a civil petition to be appointed grandchild's guardian ad litem for purposes of probating father's estate.

In 2008 and 2009, grandmother continued to have contact with grandchild, although the parties disagree about the frequency. Grandmother testified she spent 30 to 35 weekends (including partial and daytime visits) during 2008 and 44 full or partial weekends in 2009 with grandchild; mother testified grandchild was with grandmother only 20 weekends in 2008 and 24 weekends in 2009. For eight months spanning 2010 and 2011, mother attended weekend police academy classes and grandchild stayed with grandmother.

2

After the weekend visits with grandmother, grandchild would act out, throw tantrums, kick and hit, and tell mother he did not want to be around her and that she "wasn't his mom."

Grandmother noticed bruising on grandchild in February 2011. Grandchild told grandmother that mother hit and kicked him in the stomach and buttocks. Grandmother reported this to Child Protective Services (CPS).

Grandmother subsequently filed a petition for visitation, requesting visits with grandchild every weekend from Friday evening through Sunday evening in the months having only four weekends, and with mother having alternating fifth weekends. In support of her petition, grandmother averred that grandchild has a "nurturing and caring relationship" with her, and that grandchild benefits from the love and attention he receives from grandmother and her husband, who play with grandchild and teach him to be respectful and courteous.

Mother opposed grandmother's petition, asserting that it would not be in grandchild's best interest to spend time with grandmother. Mother said grandmother blamed mother for father's death and treated mother with disrespect. Grandmother refused to listen to mother's wishes regarding how to discipline grandchild, how to feed him, where he may and may not go, who is around him, what farm equipment he may be on or near, where he should be sleeping, when he should go to bed or take naps, and when he should return to mother. Grandmother frequently fought with and threatened mother, and mother believed grandmother was mentally unstable. Grandmother acted as though she, not mother, was grandchild's parent, and threatened to take grandchild away. Mother said she does not drink alcohol around grandchild, does not approve of grandmother drinking alcohol around grandchild, and does not approve of grandmother's husband allowing grandchild to chew the ice from his alcoholic drinks. Mother does not believe in allowing grandchild to be around loaded guns until he is old enough to get a hunting license, but grandmother refused to respect mother's wishes and allowed

3

grandchild to hold a loaded gun and shoot. When mother concluded that grandchild was in danger at grandmother's house due to grandmother's use of alcohol, the availability of guns, and grandmother's instability, and refused grandmother any further contact, grandmother reported to CPS that mother was beating grandchild. Mother said CPS has been called out to mother's home twice; both complaints were found to be "unfounded" and CPS recommended that mother report grandmother for making a false report.

Grandmother submitted a declaration in reply, in which she averred she has "tried to follow" mother's instructions for grandchild's welfare, but she is unaware of any rules regarding alcohol, guns, discipline, or people or places that are off-limits. Grandmother does allow grandchild to ride on the all-terrain vehicle (ATV) and on the tractor ("in our laps at a safe speed"), but denied that she allowed grandchild to handle or shoot a loaded rifle. Grandmother also said members of mother's family drink beer and mother has posted pictures of "parties" at her home on the internet. Grandmother admitted twice telling mother she would resort to the court system to see grandchild and, although she denied reporting mother more than once to CPS for possible child abuse, grandmother admitted having "mentioned . . . to a few people" her concerns about bruising on grandchild and "[t]hey may have called CPS." Grandmother denied any instability and asserted that grandchild will have a "more fulfilling life" if she and her husband are allowed to be involved with him. Grandmother also averred that she loaned $505 to mother, most of which mother had not repaid.

In addition, grandmother submitted declarations from friends stating that depriving grandmother and her husband of visitation would hurt them and "cheat" grandchild, and that the grandchild said "he doesn't like his home with his mother."

The trial court ordered interim visitation by grandmother with grandchild two Saturdays per month for four hours, but ordered that grandchild must not be allowed around the farm equipment, must not be allowed to play on an ATV, no one was allowed to consume alcohol during the visit, and all firearms were required to be locked up.

4

The matter was thereafter referred to a court mediator. The mediator recommended that grandmother's visitation be limited to one Saturday per month for two hours at a public place pending further hearing, and the trial court so ordered.

The unreported hearing on grandmother's petition spanned more than one day. Mother testified grandmother did not respect her as grandchild's mother, was disrespectful of her in grandchild's presence, refused to allow her to speak to grandchild while he was in grandmother's care, and twice swore at her during visitation. Grandmother denied swearing. Mother said that despite her admonitions, grandmother often called grandchild by the nickname she had used for father, which caused mother concern that grandmother was improperly transferring her feelings for father to grandchild. Grandmother admitted using the nickname; she had started using grandchild's proper name, but lapsed periodically.

At mother's request, grandmother attended grief counseling, and mother testified she believed grandmother needed more counseling. Grandmother and mother both testified there had been conflict when mother attempted to retrieve personal items belonging to her and grandchild after father's death.

A social worker who observed one visit between grandmother and grandchild described their interaction as very affectionate; they played ball, climbed on park playground equipment and held hands while walking.

Mother's sister testified she observed grandmother scold grandchild by shaking her finger at him and "tossing" him into the child seat of a shopping cart at Walmart with enough force to shake the cart; grandmother denied the event could have occurred because she was out of the area at the time, and she does not shake her finger at grandchild.

Grandmother testified she would agree to prevent grandchild from riding on the ATV, and she would also agree to an order that she abstain from alcohol during her visits with grandchild. Grandmother admitted that she kept a loaded squirrel gun near the door,

but denied that grandchild had "access to the weapon" and agreed that in the future, the rifle would be kept in a locked area.

Mother testified she did not intend to exclude grandmother entirely from grandchild's life, but wanted to allow visits on her own terms. Grandmother testified she wanted to have visits with grandchild on alternating weekends.

Following the hearing, the trial court issued a lengthy decision. Citing *Hoag v. Diedjomahor* (2011) 200 Cal.App.4th 1008 (*Hoag*), the trial court explained that a parent's decision regarding visitation is entitled to presumptive validity and must be accorded special weight, but it is not immune from judicial review. (*Hoag, supra*, 200 Cal.App.4th at p. 1017.)

The trial court found that mother was a fit parent. Accordingly, the trial court said it gave special weight to mother's parenting decision to limit grandmother's visitation, and that it presumed mother's decision was in grandchild's best interest. The trial court then said: "The court now must consider and weigh the evidence supporting [m]other's decision to curtai[l] visitation to determine whether the presumption given to [m]other's decision has been overcome."

The trial court found that grandchild had a significant amount of contact with grandmother early in his life, that grandchild valued his opportunity to spend time with grandmother, and there was mutual affection between grandchild and grandmother. The trial court also found that grandchild developed a positive attachment to grandmother and that the relationship between grandchild and grandmother is bonded, nurturing and beneficial to grandchild.

The trial court then addressed mother's assertions that grandmother posed a risk of danger to grandchild, that grandmother was attempting to undermine mother, that grandmother engaged in a pattern of disrespect, or that grandmother was inappropriately transferring her affection to grandchild following the loss of her son. The trial court concluded there was insufficient evidence of those concerns. The trial court said it did

6

not appear from the evidence that grandmother contacted CPS multiple times or that the contact was based on anything other than a genuine concern for grandchild. Regarding the concern that grandmother attempted to undermine mother, the trial court said it gave the "most weight" to mother's testimony and it assumed that grandmother did swear at mother on two occasions, but there was insufficient evidence that grandmother was attempting to undermine mother. The trial court also found there was insufficient evidence that grandmother's conduct was dangerous to grandchild. The trial court said the aunt's testimony about grandmother scolding grandchild and tossing him into the seat of a shopping cart did not demonstrate a pattern of abusive conduct, and noted that grandmother expressed willingness to abstain from alcohol during visitation, abide by a court order prohibiting grandchild from riding the ATV or farm equipment, and to prevent grandchild's access to firearms.

Based on the evidence, the trial court found that grandchild had a strong, loving, nurturing relationship with grandmother throughout his life, and the established relationship was sufficiently beneficial to grandchild that it should be facilitated. Accordingly, the trial court found that regular visitation with grandmother was in grandchild's best interest.

The trial court granted grandmother overnight visitation with grandchild twice a month if the parties could agree; otherwise, on the first and third weekends. The trial court ordered mother to give grandmother 30 days advance written notice if mother wanted uninterrupted time with grandchild during the summer, and grandmother was permitted to have grandchild for 2 one-week periods each year, after giving mother notice. The trial court prohibited grandmother from using alcohol or allowing others to use alcohol while grandchild was in her care, and ordered that grandchild would not have access to firearms and would not ride the ATV or other dangerous farm equipment. If the parties could not agree on shared holiday time, grandmother would have Thanksgiving weekend and December 23 and 24 every year, and mother would not change grandchild's

7

primary residence from Siskiyou County without giving grandmother 45 days written notice and the opportunity to request modification of the visitation orders.

## STANDARD OF REVIEW

We apply a deferential abuse of discretion standard in reviewing grandparent visitation orders. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) The question is whether the trial court could have reasonably concluded that the visitation order advanced the best interest of the grandchild. (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1182 (*Rich*).) We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. (*Ibid.*) And in evaluating the factual basis for an exercise of discretion, broad deference must be shown to the trial court. (*Ibid.*) The reviewing court should interfere only if it finds that under all the evidence, viewed in the light most favorable to the trial court's decision, no judge could reasonably have made the order. (*Ibid.*)

In reviewing the order we begin with the presumption that the order is correct, and if the record is silent we indulge all reasonable inferences in support of the order. (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299.) The burden is on the party complaining to establish an abuse of discretion. (*Rich, supra,* 200 Cal.App.4th at p. 1182.) Unless a clear case of abuse is shown, and unless there has been a miscarriage of justice, the reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power. (*Ibid.*)

In addition, the evidentiary hearing in the trial court was not reported. On appeal, mother elected to use the original superior court file as the record on appeal without a record of the oral proceedings in the trial court. Accordingly, all facts consistent with the validity of the trial court's order are presumed to have existed, and the trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the

8

record.  (See *Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924; Cal. Rules of Court, rule 8.163.)

DISCUSSION

I

Mother contends the trial court erred in failing to require grandmother to prove, by clear and convincing evidence, that mother's visitation decision was detrimental to grandchild.

A

The extent of a grandparent's right to court ordered visitation with a grandchild is derived from statute.  (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 219 (*Harris*).) Family Code section 3102,[1] provides in pertinent part:  "If either parent of an unemancipated minor child is deceased, the children, siblings, parents, and grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child."

However, in *Troxel v. Granville* (2000) 530 U.S. 57 [147 L.Ed.2d 49] (*Troxel*), the United States Supreme Court held that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."  (*Troxel, supra*, 530 U.S. at p. 66 [147 L.Ed.2d at p. 57].)  The Supreme Court said that "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." (*Troxel, supra*, 530 U.S. at pp. 68–69 [147 L.Ed.2d at p. 58].)  The Supreme Court added:

---

[1] Undesignated statutory references are to the Family Code.

9

"In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren.  Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance.  And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination."  (*Troxel, supra*, 530 U.S. at p. 70 [147 L.Ed.2d at p. 59].)

Of course, a grandparent has an important interest in visiting with a grandchild. (*Rich, supra,* 200 Cal.App.4th at p. 1181.)  Moreover, a custodial parent's decision to limit or deny grandparent visitation is not immune from judicial review.  (See *Hoag, supra,* 200 Cal.App.4th 1008; *Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466.) Nonetheless, if the surviving custodial parent is fit, California courts must presume that the parent's visitation decision is in the best interest of the grandchild.  (*Rich, supra,* 200 Cal.App.4th at p. 1180.)

To overcome the presumption that the fit parent's visitation decision is in the best interest of the grandchild, the grandparent has the burden of proof to show, by clear and convincing evidence, that the parent's decision to limit or deny grandparent visitation is not in the grandchild's best interest, i.e., that it would be detrimental to the grandchild. (*Rich, supra,* 200 Cal.App.4th at p. 1180; see also *Ian J. v. Peter M*. (2013) 213 Cal.App.4th 189, 208; *Chalmers v. Hirschkop, supra,* 213 Cal.App.4th at p. 302.) This rebuttable presumption, and the high burden of proof imposed on the grandparent, simply recognizes the preference in favor of the presumably correct visitation decision of a fit surviving parent, a decision that comes " 'first.' "  (*Rich, supra,* 200 Cal.App.4th at p. 1181.)

B

Mother claims the trial court improperly placed the burden on mother to defend her visitation decision, finding that mother's concerns were not supported by substantial

10

evidence. But the trial court made those statements in reference to mother's expressed concerns that grandmother posed a risk of danger to grandchild, that grandmother was attempting to undermine mother, that grandmother engaged in a pattern of disrespect, and that grandmother was inappropriately transferring her affection to grandchild following the loss of her son. Although the trial court found there was insufficient evidence of those alleged circumstances, it also found that mother was a fit parent. The trial court explained that because of that finding, mother's visitation decision was entitled to special weight and presumptive validity. The trial court said that it gave special weight to mother's parenting decision to limit grandmother's visitation, and that it presumed mother's decision was in grandchild's best interest.

Nonetheless, mother contends the trial court did not require grandmother to rebut the presumption favoring mother's visitation decision by clear and convincing evidence. It is true that the trial court did not state the standard of proof it applied. While we might normally presume that the trial court applied the proper standard, we do not do so here because the clear and convincing evidence standard was articulated by the Court of Appeal in *Rich, supra,* 200 Cal.App.4th 1176, a case decided only about five months before the trial court's ruling, and there is no indication that the trial court was aware of the holding in *Rich*. (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 549-550; *In re Bernadette C.* (1982) 127 Cal.App.3d 618, 625.) The cases the trial court said it had reviewed predated *Rich* and do not reference the clear and convincing evidence standard.

In any event, even if the trial court applied the wrong evidentiary standard, reversal is not required unless mother demonstrates that the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) "Prejudice from error is never presumed but must be affirmatively demonstrated by the appellant." (*Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853-854; see also Code Civ. Proc., § 475; *Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 204-205; *Kettelle v. Kettelle* (1930) 110 Cal.App. 310, 314.) Our duty to determine

whether error resulted in a miscarriage of justice arises only when the appellant fulfilled her duty to tender a proper prejudice argument. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106.) "[T]he appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice." (*Id*. at p. 106.) "Absent an explicit argument that a procedural error caused prejudice, we are under no obligation to address the claim of error." (*Quail Lakes Owners Assn. v. Kozina* (2012) 204 Cal.App.4th 1132, 1137; see *Paterno v. State of California, supra*, 74 Cal.App.4th at p. 106.)

Here, mother does not articulate how the asserted error by the trial court resulted in a miscarriage of justice. Accordingly, even if the trial court applied the wrong evidentiary standard, mother has not met her ultimate burden on appeal.

II

Mother next contends the trial court infringed on mother's fundamental right to determine the amount and quality of grandchild's time with third parties by substituting its own judgment about the child's best interests for mother's.

Although entitled to presumptive validity, a fit parent's decision that grandparent visitation is not in the child's best interest is subject to judicial review. (*Rich, supra*, 200 Cal.App.4th at p. 1180; *Hoag, supra*, 200 Cal.App.4th at pp. 1010, 1016.) A trial court can constitutionally grant grandparent visitation over the objection of a fit parent where, for example, the parent's reasons for objecting to visitation are not reasonable and not credible. (*Hoag, supra*, 200 Cal.App.4th at p. 1010.) Thus, a fit parent's visitation decision is not unassailable.

Moreover, as we have explained, mother has not shown how any error resulted in a miscarriage of justice. As a general rule, constitutional error does not automatically require reversal. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 306 [113 L.Ed.2d 302, 329].) In the case of constitutional error, appellate courts may apply the *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705] harmless error analysis where, as here,

12

the error may be "quantitatively assessed" in order to determine whether it was harmless beyond a reasonable doubt. (*Arizona v. Fulminante, supra*, at p. 308 [113 L.Ed.2d at p. 330]; *In re Enrique G.* (2006) 140 Cal.App.4th 676, 685-686 [an error that violates parent's due process rights in a dependency proceeding is reviewed under the *Chapman v. California* harmless error analysis].) The California Supreme Court has said, "In our view, if a civil litigant was permitted to introduce evidence, cross-examine witnesses, and present argument before a fairly selected jury that rendered its honest verdict on the trial record, there has been no 'structural [defect] in the constitution of the trial mechanism' that might call for automatic reversal of a civil judgment without consideration of actual prejudice." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 579.)

" 'Structural' " error, in contrast, involves " ' "basic protections, [without which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." [Citation.]' [Citation.]" (*In re Enrique G.*, *supra*, 140 Cal.App.4th at p. 685.) Structural errors affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself." (*Arizona v. Fulminante, supra*, 499 U.S. at p. 310 [113 L.Ed.2d at p. 331].) Such errors are not subject to the conventional harmless-error analysis because they affect the entire conduct of the trial from beginning to end. (*Id*. at pp. 309-310 [113 L.Ed.2d at pp. 330-332]; *Soule v. General Motors Corp., supra,* 8 Cal.4th at p. 577.) "In the civil context, structural error typically occurs when the trial court violates a party's right to due process by denying the party a fair hearing. [Citation.] Structural errors requiring automatic reversal include denying a party's request for a jury trial [citation] and violating a party's right to present testimony and evidence [citation]." (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 534.) "A structural error requires reversal without regard to the strength of the evidence or other circumstances. [Citation.]" (*In re Enrique G.*, *supra*, 140 Cal.App.4th at p. 685.)

Mother does not contend that this case involves a structural error requiring automatic reversal, and she has not demonstrated prejudice resulting from any constitutional error. Accordingly, we reject her claim that the judgment must be reversed.

III

In addition, mother claims the amount and frequency of the visitation ordered by the trial court excessively interferes with mother's parenting. Again, however, mother has not established prejudicial error requiring reversal of the judgment.

DISPOSITION

The order granting grandmother's petition for visitation is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278 (a)(5).)

      MAURO      , J.

We concur:

     NICHOLSON    , Acting P. J.

     BUTZ     , J.