Filed 6/11/26  Amador v. Abbass CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| HUGUETTE MOLINA AMADOR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>AHMAD ABOU ABBASS et al.,<br><br>Defendants and Respondents. | G065047<br><br>(Super. Ct. No. 30-2023-01349357)<br><br>O P I N I O N |

Appeal from judgments of the Superior Court of Orange County, Craig L. Griffin, Judge. Affirmed.

Huguette Molina Amador, in pro. per., for Plaintiff and Appellant.

Schmid & Voiles and Denise H. Greer for Defendant and Respondent Ahmad Abou Abbass.

Baker, Keener & Nahra, John P. Nahra, Brenda K. Benson and Christopher K. Berberian for Defendant and Respondent Mission Hospital Regional Medical Center.

Cole Pedroza, Kenneth R. Pedroza and Kristin Tannler; Peabody & Buccini, Thomas M. Peabody and Rocco J. Alexander for Defendant and Respondent Craig Allen Salcido.

*   *   *

Plaintiff Huguette Molina Amador underwent a surgery at defendant Mission Hospital Regional Medical Center (Mission Hospital). The procedure was performed by defendants Dr. Craig Allen Salcido, an obstetrician-gynecologist, and Dr. Ahmad Abou Abbass, a general surgeon. Amador filed this self-represented lawsuit against Mission Hospital, Dr. Salcido, and Dr. Abbass (collectively, defendants) for medical malpractice, alleging various injuries from the surgery.

Defendants each filed separate motions for summary judgment. Each motion was supported by an expert declaration stating that the relevant defendant had (1) complied with the applicable standard of care, and (2) not caused Amador's injuries. Because Amador did not file any conflicting expert testimony in response, the trial court found there were no triable issues of fact on the medical malpractice claim and granted summary judgment to each defendant. Separate judgments were entered.

On appeal, Amador challenges the trial court's summary judgment rulings. We need not address her arguments because her briefs lack record citations, which forfeits her arguments on appeal. Nonetheless, we have attempted to discern her arguments, and Amador has failed to meet her burden on appeal. Defendants each provided expert opinion that they acted within the applicable standard of care. By failing to present any conflicting expert testimony, Amador failed to show there were any triable issues of material fact. Nor has Amador persuaded us that the court

2

improperly excluded any evidence. The judgments in favor of defendants are affirmed.

FACTS AND PROCEDURAL HISTORY

I.

THE COMPLAINT

Amador filed this self-represented lawsuit in September 2023. The operative complaint (the complaint) alleged a medical malpractice claim against defendants.[1]

The complaint is uniquely structured. The caption page states the complaint is for medical malpractice. The second page is blank. The third page is also blank except for a statement that "I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct," followed by the date and Amador's signature. Attached to the complaint is a letter directed "To Whom It May Concern." The letter contains a lengthy narrative but fails to specify which of the alleged facts support Amador's medical malpractice claims against the different defendants. Thus, we have done our best to ascertain the facts underlying her causes of action.

Amador alleged that she sought treatment at Mission Hospital for abdominal pain. Dr. Salcido stated that a cyst on her left ovary was causing the pain and advised removing it through a robotic-assisted surgery. The surgery was performed at Mission Hospital on October 6, 2022 (the October 6 surgery), by Dr. Salcido and Dr. Abbass. After it was done, Amador was allegedly told that it had gone according to plan and was discharged that same day. Amador claimed that her condition worsened after she was

---

[1] While this case involves detailed medical information, virtually the entire record is public, including all of Amador's medical records. Further, Amador's briefs discuss the relevant health information in great detail.

discharged, forcing her to visit another hospital on October 9, 2022. She was diagnosed with "post-surgical perforation" of her bowels, which required further surgery. Amador was transferred back to Mission Hospital, which confirmed the bowel perforation. It appears that different physicians operated on her to address this issue.

Amador asserted various acts of negligence arising from the October 6 surgery. As to Dr. Salcido, Amador claimed the surgery was unnecessary and that he should have treated the cyst through alternative methods. She also alleged that Dr. Salcido did not inform her of the surgery's potential risks to her nearby organs, and she claimed she would not have consented to the surgery had she known them.[2] Amador further alleged that Dr. Salcido was a not a specialist in robotic surgery and had negligently caused the bowel perforation during the October 6 surgery.

Amador claimed that Dr. Abbass was a robotic-surgery specialist who allegedly cleaned the surgical area and then declined to continue the surgery. This purportedly led Dr. Salcido to take over the surgery, which purportedly caused the bowel perforation. Thus, Amador asserted that Dr. Abbass's refusal to complete the surgery contributed to her injuries.

Amador's claim against Mission Hospital is less clear. It appears to arise from alleged negligent care following the October 6 surgery. The trial court noted that her only specific allegation against Mission Hospital was that one of its nurses "refused to assist [her] in urinating, insisting [that she] could get out of bed [herself]. [The nurse's alleged] neglect led to [her] drains

---

[2] As described later, the record contains a signed consent that Amador gave for the October 6 surgery, in which she acknowledged its risks. These specific risks included "risk of injury to surrounding organs such as bowel, bladder and ureters."

4

overflowing, causing a rash on [her] back." Amador does not dispute this characterization on appeal.

As a result of alleged mistakes arising from the October 6 surgery, Amador claimed to have suffered permanent physical injuries. She sought "the highest possible lifelong compensation for the damages . . . endured."

II.

SUMMARY JUDGMENT

Each defendant filed a separate motion for summary judgment, and the trial court granted each one. Dr. Salcido and Dr. Abbass each submitted expert declarations from licensed physicians. These experts concluded that Dr. Salcido and Dr. Abbass had met the standard of care and had not caused or contributed to Amador's injuries. The court found these expert declarations shifted the burden to Amador to show there were triable issues of fact. Since Amador failed to provide any conflicting expert testimony, the court held that she had failed to meet this burden.

Similarly, Mission Hospital presented an expert declaration from a licensed nurse that its nursing and nonphysician staff had met the required standard of care and had not caused Amador's injuries. Amador again failed to provide any conflicting expert testimony. Thus, the court found she had failed to show a triable issue of fact.

The court subsequently entered separate judgments in favor of each defendant and against Amador. On appeal, Amador contends these judgments must be reversed because (1) there were triable issues of fact, (2) she was not required to present expert testimony on negligence, (3) the

5

trial court abused its discretion by excluding and sealing certain evidence, and (4) she was denied her right to a jury trial.[3]

## DISCUSSION

## I.

### FORFEITURE OF ARGUMENTS

Defendants assert that all of Amador's arguments on appeal have been forfeited due to her failure to comply with certain appellate rules of procedure. We agree.

"'[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.]' [Citation.] 'This means that an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record.'" (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619–620.)

---

[3] We grant Dr. Salcido's motion to augment the record to include the judgment in his favor. Amador also filed a motion to augment the record to include a postjudgment motion to strike. The motion to strike was filed while this appeal was pending, so the trial court denied it for lack of jurisdiction. Amador's motion to augment is denied because the record she seeks to include is irrelevant to our analysis. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["Augmentation does not function to supplement the record with materials not before the trial court. [Citations.] . . . Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered'"].)

It is not the appellate court's "'place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.' [Citation.] Nor [is it] 'required to search the record on [its] own seeking error.'" (*L.O. v. Kilrain*, *supra*, 96 Cal.App.5th at p. 620.) Thus, "'"[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived.'"'" (*Ibid*; *Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1172 ["[A]n appellant waives or forfeits contentions that are not supported by citations to relevant portions of the record"].)

These procedural "rules apply both to parties represented by counsel and self-represented parties. [Citation.] 'A party proceeding in propria persona "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys."'" (*L.O. v. Kilrain*, *supra*, 96 Cal.App.5th at p. 620.)

Here, the record contains over 5,000 pages of documents, including thousands of pages of medical records. Yet Amador's opening brief does not provide a single citation to the record for any of her factual assertions. Though each defendant noted this deficiency in their respondent's brief, Amador did not correct it and her reply brief again failed to support her factual assertions with record citations. Due to her failure to cite the record,

her arguments on appeal are forfeited.[4] (*L.O. v. Kilrain, supra*, 96 Cal.App.5th at pp. 619–620.)

In response, Amador argues that while "pro per applicants must follow the rules, courts have consistently held that substantial compliance – not perfection – is required." But the authority she cites for this proposition, *In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 204–205, does not support her contention. This case did not involve self-represented parties. (*Id*. at p. 197 [listing the parties' counsel].) Rather, it discussed whether strict compliance with Family Code section 2550 was required. (*Id*. at pp. 203–204.)

We recognize that courts "may take reasonable steps to enable a self-represented litigant to be heard." (*Petrosyan v. Prince Corp.* (2013) 223 Cal.App.4th 587, 594, fn. 3.) But Amador has not come close to complying – or even attempting to comply – with the above rule on record citations. (See *L.O. v. Kilrain, supra*, 96 Cal.App.5th at pp. 619–620.) Her briefs provide no usable citations for her factual assertions. Addressing her arguments would require us to scour the record on her behalf to find evidence creating a material issue of fact. This "effectively asks the appellate court to become [her] lawyer. A court cannot fairly embrace this partisan role." (*Singman v. IMDB.com, Inc.* (2021) 72 Cal.App.5th 1150, 1151–1152.)

---

[4] Amador's reply brief provides four citations for specific factual assertions. But the page numbers she provides do not match the clerk's transcript and it is unclear what source she is citing. She also generally explains where certain documents can be found: "the expert declaration from Dr. Candela (16 CT 4768-4771), the surgical report (12 CT 3509), and [Amador's] opposition and declarations (16-17 CT 4793-4808)." But she does not cite any specific information or pages from these documents. Nor is it clear what information she sought to cite from them.

Regardless, we have attempted to comprehend Amador's arguments, and she has not met her burden to show reversal is warranted.

## II.

### SUMMARY JUDGMENT

#### A. *Standard of Review*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "A defendant moving for summary judgment must show the plaintiff's causes of action have no merit. It may do so by negating an element of a cause of action . . . . The burden then shifts to the plaintiff to show a triable issue of material fact as to the cause of action or defense." (*Ghazarian v. Magellan Health, Inc.* (2020) 53 Cal.App.5th 171, 182.) Summary judgment rulings are reviewed de novo. (*Ibid.*)

#### B. *Material Issues of Fact and Expert Testimony*

"[I]n '"any medical malpractice action, the plaintiff must establish: '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.'"'" (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122.)

Further, for medical malpractice claims, "the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff. [Citation.] "California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical

9

malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.""" (*Powell v. Kleinman, supra,* 151 Cal.App.4th at p. 123.)

Here, defendants each submitted expert declarations stating they met applicable the standard of care. Dr. Salcido submitted an expert declaration from Dr. Mel Kurtulus, a licensed physician specializing in obstetrics and gynecology with experience performing robotic assisted surgery to remove ovarian cysts. Dr. Kurtulus reviewed the complaint and Amador's relevant medical records. He noted that Amador was diagnosed with tubal ovarian abscess and ovarian torsion, and Dr. Salcido recommended a robot assisted left ovarian cystectomy with a possible left salpingo-oopherectomy (removal of ovary and fallopian tube).

Dr. Kurtulus noted that Dr. Salcido explained the risks of the surgery to Amador, which included bleeding, infection, and injuries to the bowels, bladder, ureters, and other organs. Amador signed a consent for Dr. Salcido to perform the surgery and acknowledged that its potential risks included "'injury to surrounding organs such [as] bowel, bladder and ureters.'"

The surgery occurred on October 6, 2022. Dr. Kurtulus observed that after it commenced, Dr. Salcido determined "the left fallopian tube and ovary were densely adherent to the rectosigmoid colon," which obscured the surgical area. To address this issue, Dr. Salcido called in Dr. Abbass to dissect tissue from the surgical site. After Dr. Abbass was finished, he left and Dr. Salcido proceeded to remove the left ovary and fallopian tube without

10

complication. Amador tolerated the procedure well and was discharged home later that day.

Based on his review of Amador's medical records, Dr. Kurtulus opined that Dr. Salcido had complied with the applicable standard of care. He likewise concluded that no negligent act or omission by Dr. Salcido had caused or contributed to Amador's injuries. In particular, it was appropriate for Dr. Salcido to call in Dr. Abbass, a general surgeon, to address the adhesions obscuring the surgical site so that surgery could be completed. Further, he concluded there was no evidence that Amador's bowel was perforated during the October 6 surgery. Rather, he believed "the perforation spontaneously occurred after the surgery, in the absence of negligence" due to preexisting diverticulitis and diverticulosis.[5] Dr. Kurtulus likewise opined that "there was no evidence of complications" during the surgery, and it was proper for Dr. Salcido to discharge Amador the day of the surgery

Dr. Abbass submitted the expert declaration of Dr. Frank C. Candela, a licensed surgeon. Dr. Candela also reviewed Amador's medical records and the complaint. Dr. Candela reached many of the same conclusions as Dr. Kurtulus. In particular, Dr. Candela observed that while Dr. Salcido was performing the surgery, Dr. Abbass was called to address "the fallopian tube appearing densely adherent to the sigmoid colon." Dr. Abbass separated the left fallopian tube from the sigmoid colon so that Dr. Salcido could complete the procedure. Dr. Salcido then removed the left ovary and fallopian tube. Dr. Candela observed that there was no sign of bowel

---

[5] The complaint does not mention Amador's fallopian tube. But her appellate briefs argue that Dr. Salcido negligently removed a portion of her fallopian tube. Dr. Kurtulus believed the removal of the fallopian tube was necessary to complete the surgery.

11

perforation during the surgery. Rather, the medical records indicated that plaintiff "tolerated the procedure well," was in stable condition, and was discharged home later that day.

Dr. Candela opined that based on his review of the medical records, Dr. Abbass had met the applicable standard of care. He also believed that none of the treatment Dr. Abbass provided caused or contributed to Amador's injuries. Rather, like Dr. Kurtulus, he believed the bowel "perforation spontaneously occurred after surgery as a result of [Amador's] diverticulitis and in the absence of any negligence."

Mission Hospital submitted an expert declaration from Pauline Lamanski, a registered nurse. Ms. Lamanski provided opinions concerning the care provided to Amador by Mission Hospital's nurses and nonphysician staff before, during, and after the October 6 surgery.[6] Based on her review of Amador's medical records, she concluded that Mission Hospital's nonphysician staff had acted within the standard of care. Ms. Lamanski also opined that nothing the nurses or nonphysician staff did or failed to do caused or contributed to Amador's injuries.

Amador did not provide any expert testimony in response to the above declarations. Since the expert testimony above established that Dr. Salcido, Dr. Abbass, and Mission Hospital all acted within the applicable standard of care and did not cause Amador's injuries, they were entitled to summary judgment. (*Powell v. Kleinman, supra*, 151 Cal.App.4th at p. 123.)

---

[6] Amador contends that Ms. Lamanski was "not qualified to give opinions on major surgeries." However, Ms. Lamanski's opinions were confined to the actions performed by nurses and nonphysician staff. Amador has not shown that these topics were beyond Ms. Lamanski's qualifications.

12

In response, Amador claims she did not need to provide expert testimony under "the 'common knowledge' exception" because each defendant's negligence was "so clear as to be comprehensible to a layperson." Specifically, she asserts that "[t]he facts here – perforation of the bowel during a routine cyst removal, failure to document complications, and removal of a healthy fallopian tube – are sufficient to support application of the 'Common Knowledge' exception."

We disagree. As our Supreme Court has explained, "[t]he 'common knowledge' exception is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.' [Citations.] The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery. [Citation.] Otherwise, '"expert evidence is conclusive and cannot be disregarded."'" (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001.)

The factual issues Amador identifies are beyond a layperson's experience. A layperson has no training or common experience to determine (1) whether Amador's bowels were perforated during the surgery due negligence or whether the injury spontaneously occurred after the surgery due to a preexisting condition, (2) whether there were any complications during the surgery that should have been documented, or (3) whether it was within the standard of care to remove the fallopian tube to complete the surgery.

Amador also contends that defendants altered her medical records to hide their negligence. To support this claim, she attaches medical

13

records to her briefs showing they were dictated and/or signed three days after the October 6 surgery. She appears to believe this timing gap indicates the records were altered. We cannot consider documents outside the record (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102), and Amador does not state whether these medical records are part of the record. Further, even if we could consider them, any inference that these documents were altered would be speculative at best. "Responsive evidence that 'gives rise to no more than mere speculation' is not sufficient to establish a triable issue of material fact." (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889–890.)

In sum, Amador failed to provide conflicting expert testimony showing that any of the defendants breached the applicable standard of care or caused her injuries. As such, she did not show a triable issue of fact, and each defendant was entitled to summary judgment. (*Powell v. Kleinman, supra*, 151 Cal.App.4th at p. 123.)

## C. *Exclusion of Evidence*

Next, Amador claims the trial court abused its discretion by "seal[ing] and exclud[ing] [her] medical records – her primary form of proof – on the erroneous basis that their disclosure would cause irreparable harm to Defendants. The Court further disregarded the probative value of testimony from treating physicians and specialists who diagnosed her injuries."

Amador's exact argument is unclear. She appears to believe that the court's sealing of her medical records excluded them from consideration.[7] Amador misunderstands the nature of the sealing process. Court records are

---

[7] Amador fails to specify which medical records were allegedly excluded. However, she appears to be referring to the medical records attached to the declaration of Brenda K. Benson, who was Mission Hospital's counsel below.

14

generally accessible to the public. (*Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 483–486.) "Unless confidentiality is required by law, court records are presumed to be open." (Cal. Rules of Court, rule 2.550(c).) However, a court may order that records be sealed, *i.e.*, shielded from public access, when certain criteria are met. (Cal. Rules of Court, rule 2.550(d).) Amador does not address whether the sealing criteria were met here, so we need not determine whether the medical records were improperly sealed.

Regardless, even if the trial court sealed the documents in error, Amador has failed to establish any prejudice. "An appellant bears the burden to show not only that the trial court erred, but also that the error was prejudicial in that it resulted in a miscarriage of justice. [Citation.] An error is prejudicial and results in a miscarriage of justice only if the reviewing court concludes, based on its review of the entire record, that it is reasonably probable that the trial court would have reached a result more favorable to the appellant absent the error." (*Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999.)

Amador's reply brief appears to argue that she could not view the sealed documents and did not know what they contained. But the record contains a proof of service showing that the sealed documents were served on Amador, and she does not contest that service was improper. (See *American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 390 [proof of service creates rebuttable presumption of proper service].) Nor has Amador shown that sealing her medical records affected her ability to provide conflicting expert testimony. Thus, even if the medical records were unsealed, defendants would still have been entitled to summary judgment due to Amador's failure to provide such evidence.

15

To the extent Amador claims the trial court improperly excluded other evidence, she has not identified the evidence at issue. Dr. Salcido appears to have been the only defendant to have filed evidentiary objections. He "objected to [Amador's] declaration in its entirety because [she] ha[d] not shown that she is a licensed physician qualified to render medical opinion testimony. [Dr. Salcido] also objected to the exhibits offered by [Amador] as, among other things, lacking foundation." The court sustained Dr. Salcido's "objections . . . to the extent that they challenge the evidence submitted by [Amador], i.e., the declaration and exhibits."

Amador has not shown any error in the trial court's evidentiary rulings. She has not explained how she was qualified to render medical opinion, nor has she set forth any foundation for the excluded exhibits. We cannot make these arguments for her. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)

D.  *Right to Trial*

Finally, Amador contends she was improperly deprived of her right to a jury trial because the trial court granted defendants summary judgment. However, "in civil cases the right to jury trial does not ripen 'unless there is a genuine issue of material fact suitable for a jury to resolve.' [Citation.] This is why courts may grant summary judgment in civil cases without offending the losing party's right to a jury trial . . . ." (*People v. $2,709 United States Currency* (2014) 231 Cal.App.4th 1278, 1285.) Since Amador has not shown any error in the court's summary judgment rulings, she was not improperly denied her right to a jury trial.

## DISPOSITION

The judgments in favor of Mission Hospital, Dr. Salcido, and Dr. Abbass are affirmed. In the interests of justice, each party shall bear their own costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

DELANEY, J.

SCOTT, J.